No. 12003

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

JOHN T. SULLIVAN,

Plaintiff and Respondent,

-vs-

JOHN DOE, GLACIER GENERAL ASSURANCE COMPANY, A Montana
Corporation; and HARTFORD ACCIDENT & INDEMNITY COMPANY,
a Corporation,

Defendants and Appellants.

WILLIAM F. MILLER,

Plaintiff and Respondent,

-vs-

JOHN DOE, GLACIER GENERAL ASSURANCE COMPANY, a
Montana Corporation and STATE FARM INSURANCE COMPANY, a
Corporation,

Defendants and Appellants.

---

Appeal from:  District Court of the Second Judicial District,
              Honorable John B. McClernan, Judge presiding.

Counsel of Record:

    For Appellants:

        Poore, McKenzie & Roth, Butte, Montana.
        James A. Poore, III argued, Butte, Montana.

        John L. McKeon, Anaconda, Montana.
        Michael J. McKeon argued, Anaconda, Montana.

        Knight, Dahood & Mackay, Anaconda, Montana.

    For Respondents:

        Burgess, Joyce, Prothero, Whelan & O'Leary,
        Butte, Montana.
        Thomas F. Joyce argued, Butte, Montana.
        Robert O'Leary argued, Butte, Montana.

---

Submitted:  January 12, 1972

Decided: MAR 2 0 1972

Filed: MAR 2 0 1972

_Thomas J. Kearney_
                  Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is a consolidated appeal on behalf of an unidentified uninsured motorist and three insurance companies from two personal injury judgments entered against the respective insurers pursuant to "uninsured motorist" provisions of their policies. The judgments were in the amount of $20,000 each, one in favor of the policeman driver and the other in favor of the policeman passenger, of a city of Butte police car which was involved in a collision with an automobile allegedly driven by an unknown and uninsured driver, without the permission or consent of the owner.

The facts relating to the accident itself are not complex. At about 6:45 a.m. on October 21, 1969, the two plaintiffs, John T. Sullivan and the late William F. Miller, policemen for the city of Butte, were on duty patrolling the warehouse district in Butte. Patrolman Sullivan was driving the police car north on Arizona Street in the northbound lane of travel at a speed of about 15 to 20 miles an hour, with plaintiff Miller beside him in the front seat as a passenger. The street was straight, lighted with overhead lights, there was no obstruction to visibility, nor was there any traffic other than the two vehicles involved in the accident. The headlights of the police car were on and in good working order. The weather was good and the street was clear.

Immediately preceding the accident, the two plaintiffs were engaged in a conversation concerning two suspects they thought would be burglarizing a drug store. As the plaintiffs proceeded north on Arizona Street, plaintiff Miller shouted a

warning to plaintiff Sullivan to "watch out". Immediately thereafter a head-on collision occurred between the police car and a 1968 Pontiac 4-door automobile. The point of impact was in the northbound lane of travel. Plaintiff Sullivan testified that he did not see the Pontiac automobile at all prior to impact although he had been looking straight ahead and to the side for at least a half block prior to impact.

After the collision plaintiff Sullivan was semiconscious, but managed to call for help on the police car radio. When the police officer who had been called arrived at the scene of the accident, there was no one in the Pontiac, its lights and engine were shut off and it was locked. The driver of the Pontiac has never been located or identified. The Pontiac had apparently been taken from the Leskovar Motors used car lot by an unknown person without the permission or consent of the owner.

Both plaintiffs were severely injured in the accident. At the time of trial, plaintiff Sullivan had incurred medical expenses of $1,026.10 and a salary loss of $4,548. Plaintiff Sullivan was still permanently disabled at the time of trial, the extent and duration of his future disability and future medical expenses being uncertain. As a result of his injuries, he incurred considerable pain and suffering of a continuing nature. Sullivan had received a total of $14,061.05 in medical expenses and compensation benefits under the Montana Workmen's Compensation Act, as a result of his injuries and disability.

Plaintiff Miller likewise was permanently disabled with medical expenses of $1,405.30 and a salary loss of $5,003. The extent of his future disability and medical expenses was undetermined. As a result of his injuries, he suffered extensive pain and suffering which will continue in the future. He received a total of $13,735.30 in medical expenses and compensation

- 3 -

benefits under the Montana Workmen's Compensation Act.

At the time of the accident, the city of Butte carried an automobile insurance policy on the involved police car containing an "uninsured motorist" endorsement with defendant Glacier General Assurance Company and both Sullivan and Miller were "insureds" within the meaning of the policy. In addition, plaintiff Sullivan carried his own policy with an "uninsured motorist" endorsement with defendant Hartford Accident & Indemnity Company, while plaintiff Miller carried his own policy with an "uninsured motorist" endorsement with defendant State Farm Mutual Automobile Insurance Company.

Plaintiff Sullivan filed a personal injury action against John Doe, the unidentified and uninsured driver of the Pontiac automobile; Glacier General Assurance Company, the insurer of the city of Butte; and Hartford Accident & Indemnity Company, his insurer. In this action Sullivan sought judgment that the unidentified and uninsured driver of the Pontiac was liable for his injuries; that he was entitled to damages of $20,000; and, that either Glacier General or Hartford or both must pay him this sum under the "uninsured motorist" provisions of their respective policies. The defense was denial of liability on the part of the driver of the Pontiac, together with various policy defenses under the "uninsured motorist" endorsements on the respective policies.

The Sullivan case came on for trial before the district court sitting without a jury on April 29, 1970. Immediately prior to trial, all parties to the Sullivan case agreed that the district court would try only the issues of liability of the uninsured motorist to Sullivan and the damages Sullivan incurred. The parties also agreed that a separate trial would

be held thereafter in which the policy defenses of the insurers under the "uninsured motorist" coverage would be determined by the district court and judgment entered accordingly.

Following trial, the district court entered findings of fact and conclusions of law in favor of plaintiff Sullivan. In substance, the district court found the uninsured motorist negligent; found that Sullivan was not contributorily negligent; found the uninsured motorist liable to Sullivan; and, fixed Sullivan's damages at $20,000.

Thereafter, the Miller case was submitted to the district court for determination of the issue of liability of the uninsured motorist to Miller and the extent of Miller's damages, on the basis of an agreed statement of fact. The district court entered findings of fact and conclusions of law to the effect that the uninsured motorist was liable to Miller and fixed Miller's damages at $20,000.

Thereafter, the district court ordered the three defendant insurance companies to file their motions and briefs in support of their policy defenses under their "uninsured motorist" endorsements. The insurers did so and also filed a stipulation and agreed statement of facts entered into by all parties to both actions. The substance of the stipulation and agreed statement of facts sets forth the applicable policy provisions in the policy of each insurer. It provided that Glacier General had "the primary coverage" on the police car involved in the accident; that each policy provided limits of liability of $10,000 with respect to each person and $20,000 with respect to each accident under the "uninsured motorist" endorsement; and, that Sullivan had received $14,051.05 in medical and compensation benefits under the Workmen's Compansation Act and Miller had received $13,735.50.

On November 6, 1970, the district court entered judgment in both cases. The substance of the court's findings was that the "uninsured motorist" provisions in each policy authorizing an offset of other insurance benefits and workmen's compensation benefits against liability was void as against public policy and, accordingly, the insurance commissioner's approval of the policy forms containing such offsets could not validate such void provisions. The judgment held Glacier General and Hartford liable to Sullivan for $10,000 each, and Glacier General and State Farm liable to Miller in the amount of $10,000 each. All defendants appeal from this consolidated judgment against them.

The three basic issues on appeal may be summarized as follows:

1. Should plaintiffs' claims have been barred by reason of contributory negligence as a matter of law?

2. Are the policy provisions offsetting workmen's compensation benefits against "uninsured motorist" coverage void as against public policy?

3. Do any other exclusions in their respective policies preclude liability on the part of any of the insurers?

In discussing the first issue for review, we find it necessary to consider the Sullivan and Miller cases separately.

Directing our attention first to the Sullivan case, we note that this case was tried to the district court without a jury. Three witnesses testified on behalf of the plaintiff: plaintiff Sullivan; Officer Tromley of the Butte Police Department; and Butte Chief of Police Clark. In addition, the deposition of Ben F. Bentley, the used car salesman at the Leskovar Motors used car lot, was admitted in evidence by stipulation as

- 6 -

were records of medical expense and other special damages and five photographs of the accident scene. Defendants called no witnesses but cross-examined the witnesses of the plaintiff.

The key finding of fact by the district court on the issue of liability reads:

> "That at about 6:30 A.M. on October 21, 1969, while it was still dark, a City of Butte police patrol car driven by plaintiff, John T. Sullivan and occupied by William F. Miller, another police officer, was proceeding north on South Arizona Street at a speed of 15 to 20 m.p.r. in its own and proper lane of traffic when a 1968 Pontiac automobile crossed over the center line of said Arizona street from its own lane of traffic and struck head on the police car operated by plaintiff."

The district court concluded that the accident and the resulting injuries to Sullivan were proximately caused by the negligence of the unidentified and unknown motorist, and that Sullivan was not contributorily negligent.

There is no evidence supporting a finding that the Pontiac automobile crossed over the center line of Arizona street from its own lane of traffic and struck the police car head-on. In fact there is no evidence that it was moving at all at the time of the accident, or that it was anything other than an abandoned vehicle obstructing the street. The uncontradicted evidence shows that the doors of the Pontiac were found locked at the time the first investigating police officer arrived at the scene of the accident following his summons there by Sullivan. The uncontradicted evidence also shows there were no skid marks from the Pontiac on the pavement. It is likewise uncontradicted that Miller, the police officer passenger in the police car, saw the Pontiac and shouted a warning. He was not called as a witness by the plaintiff upon whom the burden of proof of negligence of

- 7 -

the uninsured motorist rested, although he was the one witness who presumably could testify as to whether the Pontiac was being driven or whether it was parked and abandoned at the time of the accident. Miller was alive at the time of the Sullivan trial, but is now deceased. The evidence further shows there was no other traffic on the street and that the street was wide enough to permit passage of the police car around any obstruction, such as the Pontiac automobile.

The uncontradicted evidence further shows that at the time and place of the accident the street was straight, there were overhead lights illuminating the street, the headlights of the police vehicle were on, in good working order, and illuminated the area ahead. Sullivan himself testified that he was looking straight ahead and to the side without distraction for at least half a block prior to the point of impact. Under such circumstances, plaintiff Sullivan is guilty of contributory negligence as a matter of law barring any recovery by him. Whether the Pontiac was moving or stopped, Sullivan should have seen it in time to avoid an accident in the exercise of ordinary care on his part. It is important to note that here there is no evidence the Pontiac was moving at all, much less that it suddenly swerved in his path without sufficient time to enable him to avoid the accident.

In Autio v. Miller, 92 Mont. 150, 165, 11 P.2d 1039, this Court said:

> "The driver must look 'not only straight ahead,
> but laterally ahead' * * * 'Moreover, a person
> is presumed to see that which he could see by
> looking.* * * He will not be permitted to say
> that he did not see what he must have seen, had
> he looked,' as Mr. Justice Toole said in Grant
> v. Chicago, M.& St.Paul Ry. Co., 78 Mont. 97, 252
> Pac. 382, 386. 'The duty to keep a lookout in-
> cludes the duty to see that which is in plain
> sight.' [Citation]"

The failure of plaintiff Sullivan to exercise reasonable

care for his own safety precludes any recovery by/against the

(him)

"uninsured motorist" herein.   In Sullivan v. Northern Pacific

Railway Co., 109 Mont. 93, 108, 94 P.2d 651, we held:

> "'"Every person is bound to an absolute duty
> to exercise his intelligence to discover and
> avoid dangers that may threaten him.  When,
> therefore, a plaintiff asserts the right of
> recovery on the ground of culpable negligence
> of the defendant, he is bound to show that he
> exercised his intelligence to discover and
> avoid the danger, which he alleges was brought
> about by the negligence of the defendant. * * *"'"

A Montana case directly in point is Boepple v. Mohalt,

101 Mont. 417, 435, 54 P.2d 857.   In that case the defendant's

road grader was on the wrong side of the road but it was visible

and there was room for the plaintiff to get past it.   This

Court held that plaintiff was contributorily negligent as a

matter of law, reversed in favor of the defendant, and in

dismissing the action, said:

> "'The duty to keep a lookout implies the duty
> to see what is in plain view, and the driver
> of an automobile is bound to operate his con-
> veyance with reference, not only to the pedestrians
> and conditions he actually sees, but also to those
> he should see in the exercise of reasonable care
> * * *.  He [a driver] could not escape the penalty
> of his negligence by saying that he did not see that
> which was in plain sight.'"

Finally, in Hall v. United States, 407 F.2d 849, a Montana

case decided by the United States Court of Appeals, Ninth Circuit,

in 1969, the plaintiff collided with an Air Force tractor-

trailer which negligently blocked or obstructed the highway.

The Federal court held that the plaintiff was barred by his

contributory negligence in driving faster at night than his

lights would safely permit or a failure to look, since the

adverse vehicle was on the highway and in plain sight.

Accordingly, the judgment of the district court in favor of plaintiff Sullivan is vacated and the action dismissed.

Turning our attention to plaintiff Miller's case, there is no question of contributory negligence involved. There is simply no basis for imputing the negligence of plaintiff Sullivan, the driver, to Miller, the passenger, nor is there any evidence of contributory negligence on the part of Miller himself. Accordingly, the district court's finding/liability of on the part of the uninsured motorist to plaintiff Miller is affirmed. Whatever Sullivan did or failed to do in regard to the accident cannot bar plaintiff Miller's recovery herein.

The second issue for review presents an important question relating to "uninsured motorist" coverage in Montana. Stated broadly, the question posed is whether it is permissible for an insurance company in Montana to place limitations in its "uninsured motorist" coverage which reduce or eliminate its liability below the statutory limits.

Section 40-4403, R.C.M. 1947, provides:

"Motor vehicle liability policies to include uninsured motorist coverage---rejection of coverage by insured. No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 53-422, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and, provided further, that unless the named insured requests such coverage in writing, such coverage need

not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer."

There is a divergence of authority in other jurisdictions with respect to whether an insurance company may reduce its liability under its uninsured motorist coverage below the statutory limit by substracting workmen's compensation benefits received. Our reading of section 40-4403, R.C.M. 1947, leads us to the conclusion that its language is both clear and direct. That section states that no liability policy can be issued for any motor vehicle which is registered in this state unless "uninsured motorist" coverage is also provided in a minimum amount of $10,000, which statutory minimum is fixed in section 53-422, R.C.M. 1947. The basic purpose of this statute is obvious--- to provide protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists.

The legislative purpose behind the enactment of such statutory provisions on "uninsured motorist" coverage is equally clear. It is simply to place the injured policyholder in the same position he would have been if the uninsured motorist had liability insurance and, accordingly, the amount of plaintiff's recovery from "uninsured motorist" coverage cannot be reduced by any workmen's compensation benefits received by him. In the Miller case, Glacier General's insurance policy contained "uninsured motorist" coverage; it applied here because the police car of the city of Butte was being operated by its policemen in the course and scope of their employment, with the permission of the city. In addition, plaintiff Miller was a named insured

- 11 -

under his own policy with State Farm Mutual Automobile Insurance Company to the extent of coverage under the $10,000 uninsured motorist endorsement therein.

The insurers concede section 40-4403, R.C.M. 1947, does not expressly authorize a deduction of workmen's compensation benefits from the $10,000 coverage afforded under the "uninsured motorist" coverage, but argue instead that that section authorizes the insurance commissioner to approve the form of their policies containing such deductions and he has done so.

We cannot agree with insurers' position. We view the intent and construction of section 40-4403, R.C.M. 1947, to mean that the legislature simply authorized the insurance commissioner to approve those policies of insurance which complied with the clear terms of the statute. In approving insurance policies at variance with the statute, the commissioner undoubtedly exceeded his authority and his approval in no way validates provisions at variance with this statute.

This Court has previously declared void certain clauses contained in insurance policies which were at variance with applicable statutes of this state. See Dominici v. State Farm Mutual Ins. Co., 143 Mont. 406, 390 P.2d 806.

In Peterson v. State Farm Mutual Automobile Ins. Co., 238 Ore. 106, 393 P.2d 651, 655, we find a situation similar to the one now before this Court. The Oregon statute on uninsured motorist coverage is very similar in language to our section 40-4403, R.C.M. 1947. In Peterson,the Oregon Supreme Court held their statute did not authorize the insurance commissioner to approve an insurance policy which permitted a deduction of workmen's compensation benefits from uninsured motorist coverage in this language:

- 12 -

"By approving the insurance policy provisions here in question, the Insurance Commissioner has made such a decision. The Commissioner's decision goes beyond the mere approval of the language ot forms drafted to accomplish the basic legislative purpose of the uninsured motorist statute. In so doing, the Commissioner has acted beyond the scope of his authority, and the provision of the insurance policy in question is void."

Directing our attention to the third issue for review, defendant State Farm contends that defendant Glacier General is the primary insurer under the agreed stipulation, and where the Glacier General policy provides the statutory minimum coverage of $10,000, there is no reason why State Farm should be required to pay an additional $10,000 under its "uninsured motorist" coverage, over and above Glacier General's liability.

The clause in its policy upon which State Farm relies reads:

"Other insurance: With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Section III shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of applicable limits of liability of this insurance and such other insurance."

This contention is without merit. In the first place, the statutory requirement of $10,000 "uninsured motorist" coverage prescribes a _minimum_ amount only and does not purport to fix a statutory _maximum._ Secondly, Miller bought and paid

for the additional "uninsured motorist" coverage afforded by his own policy with State Farm. Finally, the adjudicated liability of the "uninsured motorist" to Miller in the instant case is $20,000, which requires application to both the $10,000 coverage of the "primary insurer" Glacier General and the $10,000 coverage of the "excess insurer" State Farm, to satisfy such liability.

The nondeductibility of other insurance benefits applies for the same reasons that workmen's benefits are not deductible. The majority of jurisdictions outside Montana declare void those clauses which purport to limit liability not expressly authorized by statute. The leading decision is Peterson, heretofore cited. We refer also to Bryant v. State Farm Mutual Automobile Ins. Co., 205 Va. 897, 140 S.E.2d 817,819, wherein the Supreme Court of Virginia invalidated an "other insurance" clause as being in violation of Virginia's "uninsured motorist" statute. In Bryant, the Virginia Supreme Court stated:

> "These cases all establish that the controlling instrument is the statute and that provisions in the insurance policy that conflict with the requirements of the statute, either by adding to or taking from its requirements, are void and ineffective."

In addition, the decision of Simpson v. State Farm Mutual Automobile Insurance Co., 318 F.Supp. 1152 (1970), is important. There the United States District Court held that under Indiana law an insurer was not entitled to reduce or limit its "uninsured motorist" coverage by deduction of payments from other similar insurance even though clauses containing such provisions had been approved by the state commissioner of insurance. Simpson indicates how the minority line of authority holding such clauses valid emerged from the tenuous precedent of decisions decided

-14 -

before the enactment of state statutes similar to our section 40-4403, R.C.M. 1947.

Additionally, defendants contend that the judgment of the district court against them in the amount of $10,000 each has the effect of granting plaintiffs a "double recovery" in view of the workmen's compensation benefits previously awarded.

As a general rule, it has been held that the fact that a person receives from a collateral source payments which have a tendency to mitigate the consequences of his injury, which he suffered as a result of defendant's tort, may not be appropriated by the defendant as an offset to damages which defendant would otherwise be required to pay. There has always been a wide-spread judicial refusal to credit to the benefit of the wrong-doer money received in reparation of the victim's injury from sources other than the wrongdoer himself. See Maxwell, The Collateral Source Rule in the American Law of Damages, 46 Minn. Law Review 669; Annotations, 75 ALR2d 885 and 4 ALR3d 535.

It is axiomatic that benefits payable under Montana's Workmen's Compensation Act do not represent full payment of damages occasioned by the injury. For example, Montana's Work-men's Compensation Act provides only for payment of a percentage of the injured workman's actual wage loss in most cases; nor is there any compensation payable for pain and suffering, inter-ference with the workman's established course of life, nor any other elements of general damages; workmen's compensation benefits for disability, partial or total, are limited to statutory maxi-mums without regard to additional damages actually suffered. Accordingly where, as here, there is no evidence that the victim has received a "double recovery" for the damages he suffered, the insurer's contention is nothing but a puff of smoke.

We specifically point out, however, that nothing said herein is to be construed as authorizing recovery of any amount in excess of the total damages suffered regardless of the number of insurers involved or the aggregate amount of coverage afforded. Such are not the facts of the instant case, however.

The judgment in favor of the estate of William F. Miller against Glacier General Assurance Company and State Farm Mutual Automobile Insurance Company in the amount of $10,000 against each defendant is affirmed. The judgment in favor of John T. Sullivan against Glacier General Assurance Company and Hartford Accident & Indemnity Company is reversed and dismissed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.