No. 13352

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

ELIZA WAVERLY ROBERTS, individually
and as Administrator of the Estate
of Stephen Paul Roberts, Deceased
and Doris Roberts,

Plaintiffs and Appellants,

-vs-

BURLINGTON NORTHERN RAILROAD
COMPANY, INC.,

Defendant and Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Anderson, Symmes, Forbes, Peete and Brown,
Billings, Montana
Rockwood Brown argued, Billings, Montana

For Respondent:

Crowley, Haughey, Hanson, Gallagher and Toole,
Billings, Montana
Jack Ramirez argued, Billings, Montana

---

Submitted: October 19, 1976

Decided: NOV 3 0 1976

Filed: NOV 3 0 1976

Thomas J. Kearney
Clerk

Hon. Jack L. Green, District Judge, sitting for Mr. Justice Wesley Castles delivered the Opinion of the Court:

This is a wrongful death and survival action filed by the parents and personal representative to recover damages arising from the death of Stephen Paul Roberts, age 16. The district court, Yellowstone County, granted summary judgment on defendant's motion.

The accident occurred on March 20, 1972 at approximately 7:40 p.m. at a point within the city limits of Laurel, Montana, where a spur track of Burlington Northern Railroad which runs in a general north-south direction, crosses Railroad Street, which lies in a general east-west direction. The crossing is located 528 feet or approximately one-tenth of a mile from the intersection of Railroad Street and First Avenue South. The crossing was marked by a crossbuck, or railroad crossing sign, painted white with black lettering. There was no electric signal but a street light was located at the northeast corner of the crossing. The street light has a bulb with a green reflector and was on at the time. Railroad Street is paved, heavily traveled and almost level in the vicinity of the crossing except for a slight incline at the crossing itself. The pavement was dry and the weather was clear.

Stephen Roberts had lived all his life in Laurel and, at the time, was operating a 350 Yamaha motorcycle which he had owned one week. He was in the company of a friend, Steven Blohm, who riding a 250 Suzuki motorcycle.

Defendant was operating a train unit of twenty gondola cars, with the locomotive at the south end, and was backing across the crossing in a northerly direction.

- 2 -

Jerry Malcomb Jones, a switchman for the Burlington Northern, was on the lead car of the train unit prior to and at the time of the accident. The train was moving at a walking speed, approximately three miles per hour.

As the unit approached the crossing, Jones got off and went ahead of the train to the middle of the crossing. He was holding a hand flashlight or lantern. No traffic was coming and as the lead car was almost through the crossing (the front of the lead gondola car was about 3/4 over the crossing) he looked both ways, saw no approaching traffic, and climbed back on the lead car. He had climbed all the way up and/was standing inside the lead gondola when he saw the two motorcycles turn from First Avenue onto Railroad Street. He started to wave his lantern and moved southerly inside the gondola.

The boys had been at Roberts' home and were on their way to Blohm's home. They turned from First Avenue and proceeded on Railroad Street in a westerly direction. They were traveling at about five miles per hour as they made the turn. Roberts then asked Blohm if he "wanted to race". Blohm did not respond and Roberts began to accelerate more rapidly than usual. Blohm also accelerated and the boys were racing. As they proceeded along Railroad Street, Roberts started to pull away from Blohm, and, at least part of the time, was glancing back at Blohm. At one time, Blohm indicated his speed was 30 to 35 miles per hour and, at another time, stated it was 35 to 40 miles per hour. Blohm glanced up once and saw nothing unusual; he glanced up again and saw a light which he thought was a street light; he glanced up a third time and saw a light about 15 to 20 feet above the road and

to the right of the center of the road, going up and down, but he kept going faster. He then applied his brakes, apparently seeing the white lettering on the side of the dark, rusted, red gondola car and turned left off the road between a telephone pole and the railroad track, went into a yard and drove back up on the road.

Prior to leaving the road, he had observed the brake light come on on Roberts' motorcycle, which braked for a distance of 81 feet, then went over on its side leaving 30 feet of scrape marks and skidded into the rear wheels of the lead gondola. By the impact, Roberts was thrown to the right and the motorcycle to the left. Roberts was not wearing a helmet and received head injuries.

The switchman, Jones, estimated the motorcycle's speed at 60 miles per hour before the brakes were applied and 10 miles per hour at the time of impact. Highway patrolman Carranco, based on his investigation, estimated the speed at 50 miles per hour when the brakes were applied. Dr. Robert J. McRae, a professor of physics at Eastern Montana College, estimated the speed at 40 to 48 miles per hour. The speed limit at that point was 25 miles per hour. Officer Carranco and Dr. McRae agreed that if Roberts had been traveling the speed limit he could have stopped in time.

Officer Carranco testified the crossing was visible from the light of the street light when standing at the intersection of First Avenue and Railroad Street one-tenth mile away. The view south of the crossing was obscured by buildings and vegetation.

There had been two other fatal accidents at the same crossing, one within 4 1/2 months prior to March 20, 1972 and one 9 months after.

Plaintiffs claim the crossing was extra hazardous and defendant was negligent:

1. In the manner in which the crossing was flagged. According to the testimony of Jones, it was the usual and customary practice to flag traffic at this spur crossing and to protect the crossing until the front of the movement had passed over the crossing.

2. In failing to maintain suitable electric or mechanical warnings at the crossing.

3. In failing to maintain adequate lighting at the crossing.

Defendant claims it was not negligent or, if negligent, its negligence was not a proximate cause of the accident. It further maintains Roberts was contributorily negligent in failing to keep a proper lookout, exceeding the 25 miles per hour speed limit and in racing in violation of law. Defendant further argues that summary judgment was properly granted on the basis of either contributory negligence or comparative negligence.

In Beierle v. Taylor, 164 Mont. 436, 439, 524 P.2d 783, the Court said:

> "Rule 56(c), M.R.Civ.P., provides that summary judgment is proper if:
>
> "'* * *the pleadings, depositions, answers to interrogatories, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'
>
> "The burden of establishing the absence of any issue of material fact is on the moving party. * * * But where the record discloses no genuine issue of material fact, the party opposing the motion must present substantial evidence raising such issue. [Citing cases]".

In Barich v. Ottenstror, ____Mont.____, 550 P.2d 395,

33 St.Rep. 481, 483, the Court again said:

> "In light of Rule 56, M.R.Civ.P., the party opposing
> a motion for summary judgment on a record which reveals
> no issue of material fact must present facts of a
> substantial nature. Conclusory or speculative state-
> ments are insufficient to raise a genuine issue of
> material fact."

In the instant case, although the switchman, Jones, may
have violated the rule in not remaining on the ground until the
front of the movement had passed over the crossing, the front of
the movement had passed over the crossing before Roberts began
to approach the crossing. Therefore, if Jones' action did con-
stitute negligence, it could not be a proximate cause of the
accident. Further, the crossing was visible from the street light
from a distance of 528 feet, or approximately one-tenth mile.
At the time the boys turned onto Railroad Street, the first car of
the movement was across the crossing and visible from the
intersection with First Avenue.

On the other hand, Roberts had the duty to exercise
reasonable care, including the duty to keep a proper lookout.
Sullivan and Miller v. Doe, 159 Mont. 50, 495 P.2d 193.

Section 32-2144, R.C.M. 1947, provides that every person
operating a vehicle shall drive at a rate of speed no greater
than is reasonable and proper under the conditions, taking into
account the condition of the surface and the freedom of obstruction
to vision ahead. Further, it provides that in any urban district
the speed limit is 25 miles per hour, but a driver shall:

> "* * * drive at an appropriate reduced speed when
> approaching and crossing an intersection or railway
> grade crossing * * *."

- 6 -

Section 32-2143.1, R.C.M. 1947, provides:

"No race or contest for speed shall be held and no
person shall engage in or aid or abet in  any
motor vehicle speed contest or exhibition of speed
on a public highway or street without written permission
of the authorities * * * having jurisdiction * * *."

Violation of a statute or ordinance is negligence as a

matter of law. Rader v. Nicholls, 140 Mont. 459, 373 P.2d 312.

Here defendant met its initial burden under Rule 56 when

it proved Roberts failed to keep a proper lookout, violated the

speed limit and engaged in racing in violation of section 32-2143.1.

The proof before the district court failed to support the

plaintiffs' contentions.

Under the facts, the district court was correct in granting

summary judgment. It was incumbent on the plaintiffs to come

forward with proof of their contentions to show that a genuine

material fact issue existed.

Judgment is affirmed.

_____
Hon. Jack L. Green, District Judge,
sitting for Justice Castles.


We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 7 -