FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, Plaintiff–Appellant,

v.

Robert E. MILLER; Carole J. Miller, the Estate of Richard Miller, Deceased, Defendants–Appellees.

No. 87–4215.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1988.

Decided March 8, 1989.

Dennis P. Clarke, Smith, Walsh, Clark & Gregoire, Great Falls, Mont., for plaintiff-appellant.

Erik B. Thueson, Thueson Law Office, Helena, Mont., for defendants-appellees.

Before FLETCHER, KOZINSKI and TROTT, Circuit Judges.

KOZINSKI, Circuit Judge:

On February 23, 1986, Richard Miller was a passenger in a car driven by Richard Dean Smith. Smith ran a red light and crashed into another vehicle, killing Miller.

Three years later, the amount Miller's parents will recover from their insurance company turns on our resolution of two questions of Montana insurance law: Is an offset provision in an underinsured motorist policy either ambiguous or contrary to public policy? We hold that the provision is neither.

## I

At the time of the accident, Miller and his parents, appellees Robert and Carole Miller, were named insureds under a "Business Auto Policy" issued by appellant Farmers Alliance. The policy included an uninsured/underinsured motorist endorsement providing up to $50,000 of coverage for accidents where the party at fault had no insurance or insurance amounting to less than $50,000. The endorsement contained an offset clause: "Any amount payable under the insurance shall be reduced by ... [a]ll sums paid by or for anyone who is legally responsible...."

Colonial Insurance Company, Smith's insurer, concedes that Smith negligently caused the accident. Pursuant to Smith's policy, the Millers received only $22,500 from Colonial. Accordingly, Farmers Alli-ance reduced the $50,000 coverage limit of the Millers' policy by the $22,500 the Millers had already received, and paid the Millers $27,500.

Farmers Alliance then brought an action in federal district court pursuant to 28 U.S.C. § 2201 (Supp. IV 1986) and 28 U.S.C. § 2202 (1982), seeking a declaratory judgment that it owed the Millers no more.[1] The Millers claimed they were entitled to the full $50,000.[2] The parties stipulated that the Millers' wrongful death and survival claims are probably worth more than $50,000.

The district court granted the Millers' motion for summary judgment. *Farmers Alliance Mut. Ins. Co. v. Miller*, No. CV-86-237-GF (D.Mont. Aug. 24, 1987). The court found the offset clause in the Millers' insurance policy unenforceable for two reasons. First, the court determined that the policy is ambiguous in that "[t]he declaration page of the Millers' policy indicates they have 'uninsured' motorist coverage in the amount of $50,000." *Id.* at 2–3. Because it fails to mention the offset clause, the declaration page thus conflicts with the body of the policy. The court concluded that, under Montana law, the ambiguity has to be resolved in favor of the Millers.

Second, the district court held that the offset clause is void as contrary to the public policy of Montana where, as here, the insured party has not been fully compensated. *Id.* at 3. Because everyone agreed that the Millers' claims exceed $50,000, the court determined that "the insureds are never going to be fully compensated for their injuries herein." *Id.* at 4. The court accordingly ruled that the Millers were entitled to the full $50,000.

## II

We review de novo a grant of summary judgment. *Danner v. Himmelfarb*, 858

---

1. The district court had diversity jurisdiction: Farmers Alliance is chartered and has home offices in Kansas, the Millers are residents of Montana, and the amount in controversy exceeded $10,000. *See* 28 U.S.C. § 1332 (1982).

2. In their answer to Farmers Alliance's complaint, the Millers claimed they were owed an additional $100,000, for a total of $150,000—$50,000 for each of the named insureds. The Millers have apparently dropped this contention on appeal.

F.2d 515, 516 (9th Cir.1988). As a federal court sitting in diversity, we apply Montana substantive law. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because we confront an issue not yet decided by the Montana Supreme Court, we must determine the result that court would reach if it were deciding the case. *See Molsbergen v. United States,* 757 F.2d 1016, 1020 (9th Cir.), *cert. dismissed,* 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed. 2d 706 (1985). In making this determination, we review de novo the conclusion of the district court sitting in the state whose law we are interpreting. *In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

A. Ambiguity

■ In Montana, as elsewhere, when an insurance contract is ambiguously drafted, so that it is reasonably susceptible of two constructions, one favorable to the insurer and the other favorable to the insured, a court must adopt the construction favorable to the insured. *State Farm Mut. Auto. Ins. Cos. v. Queen,* 212 Mont. 62, 685 P.2d 935, 937 (1984). We examine the Millers' policy through the eyes of a reasonable purchaser of insurance, *see Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 656 P.2d 820, 824 (1983), to determine if the policy is ambiguous.

The offset clause itself is certainly not ambiguous. It reads in full:

E. OUR LIMIT OF LIABILITY

1. Regardless of the number of covered *autos, insureds,* claims made or vehicles involved in the *accident,* the most *we* will pay for all damages resulting from any one *accident* is the limit of UNINSURED MOTORISTS INSURANCE shown in the declarations.

2. Any amount payable under the insurance shall be reduced by:

a. All sums paid or payable under any workers' compensation, disability benefits or similar law, and

b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

3. Any amount paid under this insurance will reduce any amount an *insured* may be paid under the policy's LIABILITY INSURANCE.

While the policy is perhaps guilty of an indiscriminate use of boldface type, it is difficult to see how this section could have been drafted in a manner more likely to be understood by an ordinary purchaser of insurance. Section 2 states very clearly that any recovery will be reduced by sums received from other sources. The words of the offset clause admit of only one reasonable construction: the $22,500 the Millers received from Colonial must be deducted from the $50,000 payable by Farmers Alliance.

The Millers attempt to find ambiguity in the location of the offset clause. This is a plausible approach, as the Montana Supreme Court has, on occasion, found ambiguity resulting from the placement of language within insurance policies. In *Jacobson v. Implement Dealers Mut. Ins. Co.,* 196 Mont. 542, 640 P.2d 908, 912 (1982), for instance, the court voided a clause excluding uninsured motorist coverage where the policyholder was injured in a car that was not insured, because the clause "is lost in the myriad of verbiage that makes up the insurance contract. This particular exclusion clause would be unnoticeable by the average policyholder and can, therefore, never constitute an express waiver."

This case is not *Jacobson.* The Millers' auto insurance policy, including all endorsements, comprises 11 pages of text. The uninsured motorist endorsement occupies pages 10 and 11; the offset clause is on page 11. The offset clause appears in a logical position within the uninsured motorist endorsement, which in turn occupies a logical position within the policy as a whole. The offset clause is not lost in a "myriad of verbiage" in the sense that it is inserted in the midst of a number of confusing or unrelated provisions; the clause is set off under the heading "OUR LIMIT OF LIABILITY" right at the top of page 2 of the endorsement. Neither is the clause lost in a "myriad of verbiage" in the sense that it is contained in a document too long

for the average policyholder to read in one sitting; we do not believe the Montana Supreme Court would relieve insurance buyers of the responsibility of reading a contract 11 pages long. Nor does the mere fact that a provision appears on the last page of a policy render the provision unenforceable; *something* has to be near the end.

The Millers would also find ambiguity in the fact that the offset clause is not mentioned on the policy's declaration page. The declaration states that the Millers have purchased $50,000 of uninsured motorist coverage, but does not disclose that this amount may be reduced by sums received from other sources. The Millers claim that the offset clause is void because "[o]ne has to read a provision within the body of the endorsement to try to figure this out." Response Brief of Appellees at 18. The district court found this omission critical: "[I]f Farmers Alliance intended the subject policy to pay only the difference between what its insured receives from an insured tortfeasor and the limit set forth in the uninsured motorist endorsement, then Farmers Alliance should have drafted the policy accordingly." *Farmers Alliance Mut. Ins. Co. v. Miller*, No. CV–86–237–GF, at 3 (D.Mont. Aug. 24, 1987). No Montana court has adopted this reasoning; a similar holding applying Montana law has been reached only by another federal district court. *Transamerica Ins. Group v. Osborn*, 627 F.Supp. 1405, 1408–09 (D.Mont.1986).

To accept this argument would rob the declaration page of any value. If omission of a policy provision from the declaration page renders the policy ambiguous, the declaration page would have to duplicate the policy in its entirety. The declaration page is intended to give the policyholder an overview of the major aspects of the policy; it loses its utility if every provision must be included in full. We do not believe that the Montana Supreme Court would reach a result that would have the effect of depriving Montana policyholders of this useful device.

Finally, the Millers point to the fact that the district courts below and in *Osborn* held the provisions in question to be ambiguous; these findings, they argue, establish that reasonable people may reach different interpretations of the clause's meaning. This contention confuses two levels of disagreement: disagreement as to the meaning of the clause and disagreement as to whether or not the clause is ambiguous. Reasonable disagreement as to a clause's meaning establishes that it is ambiguous; disagreement as to the clause's ambiguity cannot itself establish ambiguity. Disagreement as to the existence of a thing cannot prove its existence, whether the thing is ambiguity or anything else.

Neither the offset clause nor the policy as a whole is ambiguous. We turn to the Millers' second claim, that the clause is void as contrary to the public policy of Montana.

## B. Public Policy

■ Companies selling auto insurance in Montana must offer uninsured motorist coverage. Mont.Code Ann. § 33–23–201(1) (1987). The Montana Supreme Court has interpreted this provision as expressing the legislature's intent that uninsured motorist coverage serve as a surrogate for an uninsured tortfeasor's missing liability insurance. Recovery under an uninsured motorist clause thus cannot be subject to any offsets to which the tortfeasor himself would not have been entitled. *See, e.g., Sullivan v. Doe*, 159 Mont. 50, 495 P.2d 193, 198–99 (1972) (holding that uninsured motorist coverage cannot be reduced by workers' compensation received). The court has therefore consistently voided clauses purporting to reduce or exclude uninsured motorist coverage. *See, e.g., id.*, 495 P.2d at 199–200 (voiding an offset clause functionally identical to clause at issue here). *See also Guiberson v. Hartford Casualty Ins. Co.*, 217 Mont. 279, 704 P.2d 68, 74 (1985) (voiding clause excluding coverage where car used without consent of owner) ("This Court does not support provisions placed on uninsured motorist coverage which restrict or thwart available liability coverage that the insured would be

entitled to in an accident.") *Jacobson v. Implement Dealers Mut. Ins. Co.*, 196 Mont. 542, 640 P.2d 908, 911 (1982) (voiding clause excluding coverage where insured occupied a car different from insured car). The Millers claim that their case fits neatly at the end of this line of precedent.

The Millers, however, are not claiming under their *un*insured motorist coverage. Richard Dean Smith was insured; his insurance was the source of nearly half of the Millers' recovery. The Millers are seeking payment under their *under*insured motorist coverage, which provides protection in the event of injury in an accident with someone whose insurance coverage is less than the value of the Millers' policy.[3] Uninsured motorist coverage ensures that a policyholder will receive *some* payment; underinsured motorist coverage ensures that a policyholder will receive at least a certain *level* of payment.

The distinction is crucial. Despite the similarity in names, uninsured and underinsured motorist coverage are fundamentally different. Uninsured motorist coverage acts as a substitute for a tortfeasor's missing liability coverage. Underinsured motorist coverage presupposes some liability insurance but acts as a gap-filler, ensuring that the insured recovers at least the amount he is insured for, even if the tortfeasor's insurance coverage is deficient. By its nature, therefore, underinsured motorist coverage assumes the existence of some compensation from another source, namely the tortfeasor's liability insurance. If amounts recovered from the tortfeasor were not offset against the victim's underinsured motorist recovery, the nature of underinsured motorist coverage would change quite dramatically. Recovery in excess of the gap between the victim's underinsured motorist coverage and the tortfeasor's liability coverage would not be underinsured motorist recovery at all; it would effectively be recovery under a judicially created collision policy.[4] We see no public policy that would be served by so drastically altering the nature of the contract the parties signed.[5]

By requiring that uninsured motorist coverage be offered with all liability policies, the Montana legislature has expressed its intent that everyone be afforded the opportunity to obtain at least the statutory minimum amount of protection.[6] The Montana cases on which the Millers rely all rested upon this statutory requirement in precluding offsets to uninsured motorist

3. The Millers' uninsured motorist endorsement contains separate provisions for uninsured and underinsured motorist coverage:

   3. **"Uninsured motor vehicle"** means a land motor vehicle or trailer:

   a. For which no liability bond or policy at the time of an **accident** provides at least the amounts required by the applicable law where a covered *auto* is principally garaged [uninsured motorist coverage], or

   b. For which the sum of all liability bonds or policies at the time of an *accident* provides at least the amount required by the applicable law where a covered *auto* is principally garaged but their limits are less than the limit of this insurance [underinsured motorist coverage]. . . .

The Millers claim that because the endorsement is entitled "Uninsured Motorists Insurance," the provision under which they claim recovery must be interpreted as providing uninsured motorist coverage rather than underinsured motorist coverage. We cannot, however, interpret an insurance contract by reading only the titles of its endorsements; in Montana, an insurance contract must be interpreted in light of all of its relevant provisions. *Aetna Ins. Co. v. Cameron*, 633 P.2d 1212, 1214 (Mont.1981). The purported conflict, moreover, relates only to the Millers' assertion that the policy is ambiguous; it does not affect Montana's public policy regarding underinsured motorist insurance.

4. We note that this rationale applies with the greatest force where the offset results from liability insurance held by the tortfeasor. The result may well be different where the claimed offset results from workers' compensation, first party medical insurance or any other source that is not a necessary concomitant of underinsured motorist coverage.

5. The gap-filling nature of underinsured motorist coverage is undoubtedly reflected in its price. To void the offset provision under these circumstances would most likely increase the premiums insurers charge for this coverage.

6. Montana requires that all drivers carry liability insurance of at least $25,000. Mont.Code Ann. §§ 61–6–301; 61–6–103 (1987). The requirement that an insured be offered uninsured motorist coverage thus ensures that a policyholder will have the opportunity to receive at least this amount no matter who hits him.

coverage. *See Guiberson,* 704 P.2d at 74; *Jacobson,* 640 P.2d at 910–11; *Sullivan,* 495 P.2d at 198–200. Montana has no similar requirement that purchasers be offered underinsured motorist coverage, suggesting that no analogous public policy would be offended if the insurance company were allowed an offset for an amount equal to the liability coverage available from the tortfeasor.

### III

The offset clause contained in the Millers' insurance policy is neither ambiguous nor contrary to the public policy of Montana. We therefore reverse the decision of the district court, and remand for entry of a declaratory judgment that the Millers are entitled to no more from Farmers Alliance than the $27,500 they have already received.