**Bonnie Lynn Alderink
BENNETT, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**No. CV–89–113–BU.**

United States District Court,
D. Montana,
Butte Division.

Feb. 14, 1991.

Lyman H. Bennett, III, Morrow, Sedivy & Bennett, Bozeman, Mont., for plaintiff.

Allen P. Lanning, Conklin, Nybo, Le-Veque & Murphy, Great Falls, Mont., for defendant.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

Bonnie Lynn Alderink Bennett was an insured under two separate policies of insurance issued by State Farm Mutual Automobile Insurance Company ("State Farm"), each of which provided "underinsured" motorist coverage. Each policy provided a limit of coverage in the amount of $100,000.00. In 1986, Bennett was struck by a pickup truck as she was crossing a street in Bozeman, Montana. Bennett filed a claim with State Farm asserting her entitlement to coverage under the underinsured motorist endorsements of the two State Farm policies in the total amount of $200,000; the cumulative limits of the policies.[1] In reliance upon an "other insurance" provision contained in the underinsured motorist endorsement of each policy, State Farm paid Bennett benefits in the total amount of $100,000.00, rejecting Bennett's claim of entitlement to the stated limits of the underinsured motorist endorsement of each policy.

Bennett instituted the present declaratory judgment action, pursuant to 28 U.S.C. §§ 2201–2202, challenging the enforceability, under Montana law, of the "other insurance" provision of the underinsured motorist endorsements. The matter is before the court upon State Farm's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

## BACKGROUND

Bennett purchased a policy of insurance from State Farm to cover the operation of her automobile. Bennett opted to purchase underinsured motorist coverage. Likewise, Bennett's husband, as the named insured under a separate policy covering a different automobile, also opted to purchase underinsured motorist coverage. Each of the Bennetts was considered an omnibus insured under the underinsured motorist endorsement of their spouse's policy. Both of the underinsured motorist endorsements of each policy contained a familiar "other insurance" provision which provided:

IF THERE IS OTHER COVERAGE

1. If the insured sustains bodily injury as a pedestrian and other underinsured motor vehicle coverage applies:

(a) the total limits of liability under all such coverages shall not exceed that of the coverage with the highest limit of liability; and

(b) we are liable only for our share. Our share is that percent of the damages that the limit of liability of this coverage bears to the total of all underinsured motor vehicle coverage applicable to the accident.

The obvious design of this typical "other insurance" clause, otherwise known as a "pro-rata" clause, is to preclude the underinsured motorist coverages provided by separate policies to be considered cumulatively, or "stacked", in relation to a single injury. As is evident, the clause merely provides that when the insured has other similar insurance available, the amount of recovery is not to exceed the highest of the limits of the several insurance policies, and that the insurer will be liable only for a proportionate share of the claim.

State Farm maintains the "other insurance" provision is unambiguous and comports with the law of Montana regarding underinsured motorist coverage. Because each of the separate State Farm policies constitutes other underinsured motorist coverage with respect to the other, State Farm views the total limit of liability available to Bennett for the injuries she sustained is $100,000.00. Applying subsection (a) of the "other insurance" provision, State Farm, of course, concludes the total limits of liability under the two available underinsured motorist coverages equals the policy limits of the coverage with the highest limit of liability, i.e., $100,000.00. In accordance with subsection (b), the "pro-

1. The extent of Bennett's damages are, for purposes of the present analysis, conceded to be in excess of $200,000.00.

rata" clause, State Farm calculates its "share" of liability under each policy to be fifty percent of the $100,000 limit established under subsection (a).

Bennett, on the other hand, claims she is entitled to "stack" the coverage under each of the underinsured motorist endorsements of the separate policies for each of which a separate premium was paid. The "other insurance" provision as interpreted and applied by State Farm to the circumstances of this controversy, Bennett contends, is invalid as a matter of the public policy of the State of Montana. In the alternative, Bennett contends State Farm's reliance upon the disputed provision to reduce the liability limits exceed the reasonable expectations of Bennett as the insured.

## DISCUSSION

■ Underinsured motorist coverage is designed to provide a source of indemnification when the insured is injured by a tortfeasor who does not carry sufficient liability coverage to adequately compensate the insured. *See, State Farm Mutual Automobile Ins. Co. v. Estate of Braun,* 243 Mont. 125, 793 P.2d 253 (1990). The purpose of underinsured motorist insurance coverage is only to afford total coverage at least to the level of the underinsured motorist coverage purchased by the insured. *See, Farmers Alliance Mutual Ins. Co. v. Miller,* 869 F.2d 509 (9th Cir. 1989). Underinsured motorist coverage, like uninsured motorist coverage, is not compulsory in the State of Montana, in the sense the insured must purchase the coverage. *See,* Mont.Code Ann. § 33–23–201

(1985) (codification of insured's right to reject uninsured motorist coverage); *Kemp v. Allstate Insurance Co.,* 183 Mont. 526, 601 P.2d 20, 25 (1979). Unlike uninsured motorist coverage, however, an insurer is not required by statutory mandate to offer underinsured motorist coverage to a potential insured. *State Farm Mutual Automobile Ins. Co. v. Estate of Braun,* 793 P.2d at 256.

■ The use of provisions to preclude inter-policy stacking of uninsured or underinsured motorist coverage is not controlled by statute in the State of Montana. *See, e.g.,* Minn.Stat. § 65B.49 subd. 3a(6) (1985) (prohibiting stacking of underinsured motorist limits); Wisc.Stat.Ann. § 631.43 (1987).[2] To this point in time, the Montana Supreme Court has not had occasion to address whether Montana law permits "other insurance" clauses to deny multiple inter-policy stacking of underinsured motorist coverage. Consequently, this court is called upon to prognosticate, utilizing all available sources of state law, how the Montana Supreme Court would resolve the issue presented to this court for determination.

Prior to the enactment of Mont.Code Ann. § 33–23–203 (1987), the Montana Supreme Court had held "anti-stacking" provisions which operated to reduce coverage of each uninsured motorist policy to below the minimum insurance requirements of the state's financial responsibility law were void as against public policy. *Sullivan v. Doe,* 159 Mont. 50, 495 P.2d 193 (1972). The Montana Supreme Court also acknowl-

**2.** Mont.Code Ann. § 33–23–203 (1987) does prevent "intra-policy" stacking of uninsured motorist coverages. It provides, in pertinent part: *Limitation of liability under motor vehicle liability policy.* (1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under any such policy, including the limits of liability under uninsured motorist coverage, must be determined as follows, regardless of the number of motor vehicles insured under the policy:
(a) the limit of insurance coverage available for any one accident is the limit specified for the motor vehicle involved in the accident;
(b) if no motor vehicle insured under the policy is involved in the accident, the limit of

insurance coverage available for any one accident is the highest limit of coverage specified for any one motor vehicle insured under the policy; and
(c) the limits of coverage specified for each motor vehicle insured under the policy may not be added together to determine the limit of insurance coverage available under the policy for any one accident.
However, by its express terms, section 33–23–203(1) proscribes intra-policy stacking of insurance coverages where multiple vehicles are insured under a single policy. The statute does not operate to preclude the inter-policy stacking where separate premiums are paid for the coverages *sought to be stacked* by the insured.

edged the propriety of the inter-policy and intra-policy stacking of uninsured motorist coverage where a separate premium has been charged and collected on each vehicle for uninsured vehicle coverage. *Kemp v. Allstate,* 183 Mont. 526, 534, 601 P.2d 20, 24 (1979) *(citing, Sullivan,* 495 P.2d 193); *Mountain West Farm Bureau v. Neal,* 169 Mont. 317, 547 P.2d 79 (1976); *Chaffee v. U.S. Fidelity & Guaranty Co.,* 181 Mont. 1, 591 P.2d 1102 (1979). The rationale underlying the holdings in *Sullivan* and *Kemp* are appropriately analyzed in assessing the validity, under Montana law, of the "anti-stacking" provision of the underinsured motorist endorsement subjected to scrutiny in this litigation.

■ The fact of foremost importance is that the Bennetts paid State Farm valuable consideration for optional underinsured motorist coverage under the two separate policies at issue.[3] Consequently, we deal here with two separate contracts of insurance, each of which contained an underinsured motorist provision, and for which a separate premium was both paid by the insured and willingly accepted by the insurer. Consistent with the rationale expressed by the

Montana Supreme Court in *Kemp,* the court is compelled to conclude that Bennett is entitled to recover the aggregate sum of the coverages provided by both of the underinsured motorist endorsements since a separate premium was charged and collected on each vehicle for that coverage. *Kemp v. Allstate Ins. Co.,* 601 P.2d at 24; *see also, Sayers v. Safeco Ins. Co. of America,* 192 Mont. 336, 628 P.2d 659 (1981). In reaching this conclusion, the court is not unmindful of the fact that *Kemp* did not specifically address the validity of an "anti-stacking" provision similar to the one contained in the Bennetts' policies.[4] Nonetheless, the language of the Montana Supreme Court clearly evinces that "stacking" is not prohibited by Montana law where a separate premium has been charged and collected for the coverage in dispute. More importantly, the decision in *Kemp* embodies a pronouncement of public policy which stands for the proposition that an insurer may not place a limiting provision in an insurance policy which operates to defeat coverage for which the insurer has received valuable consideration in return for providing insurance coverage. The decision in *Kemp* can hardly be con-

**3.** State Farm suggests the "chance" that "other coverage" which may cause an offset against the coverage provided under the underinsured motorist endorsement is a factor used by the insurance company in calculating the premium. If the pro-rata "anti-stacking" provision were not included in the underinsured motorist endorsement, State Farm asserts, there would have been a recalculation of risk resulting in a higher premium. State Farm does not suggest, however, that the premiums paid by the Bennetts were calculated based upon specific consideration of the fact they held two separate policies of insurance with State Farm, both of which contained an underinsured motorist endorsement. For that matter, State Farm does not present any evidence establishing the premium paid by each of the Bennetts to secure the underinsured motorist coverage was different in amount than that paid for by any insured opting to purchase underinsured motorist coverage from State Farm in a like amount. Likewise, State Farm does not establish that the premium paid by an individual opting to purchase underinsured motorist coverage is adjusted to reflect the "other insurance" potentially available to that individual, and which would operate to reduce the amount which State Farm would ultimately be required to pay under the terms of the underinsured motorist endorsement. In

sum, State Farm presents no evidence establishing that it adjusted the premium paid by the Bennetts for underinsured motorist coverage under the policies in recognition of the fact the coverages could not be "stacked".

**4.** At issue in *Kemp* were two separate policies issued by Allstate Insurance Company which contained an uninsured motorist endorsement. 601 P.2d at 21. The first was issued to the driver of the car in which the plaintiff Kemp was a passenger and covered two vehicles, for each of which separate premiums for uninsured motorist protection had been paid. *Id.* The second, which had been issued to the parents of Kemp, covered three vehicles, for each of which separate premiums for uninsured motorist protection had been paid. *Id.* The policies were issued in Vermont and New York, respectively, and contained limits equivalent to the statutory amount of $10,000 for one person as to each vehicle covered. *Id.* It appears from a reading of the Montana Supreme Court's opinion in *Kemp* that Allstate challenged the propriety of "intra-policy" stacking of the uninsured motorist coverage. *Id.* at 22. It is not clear from the text of the opinion whether an "anti-stacking" provision, either "intra-policy" or "inter-policy" in nature was placed in issue.

sidered remarkable since it is consistent with clear precedent in Montana rejecting attempts by insurers to reduce coverage under uninsured or underinsured motorist endorsement where separate premiums for the coverage have been paid. *See, e.g., Chaffee v. U.S. Fidelity & Guaranty Company,* 181 Mont. 1, 591 P.2d 1102 (1979); *Sayers v. Safeco Ins. Co.,* 192 Mont. 336, 628 P.2d 659 (1981); *see also, Sullivan v. Doe,* 159 Mont. 50, 495 P.2d 193 (1972).[5, 6]

State Farm presses the court to simply apply the language of the insurance contracts as written, since the pro-rata clause does not, at least in State Farm's opinion, contravene the public policy of the State of Montana, nor is the text of the clause ambiguous. The court finds neither of State Farm's suggestions to be particularly persuasive.

In support of its position, State Farm talismanically invokes the decision of the Ninth Circuit Court of Appeals in *Farmers Alliance Mutual Ins. Co. v. Miller,* 869 F.2d 509 (9th Cir.1989). In *Miller,* the court, construing Montana law, held that an offset provision in an underinsured motorist policy, entitling the insurer to an offset for an amount equal to the liability coverage available from a responsible tortfeasor, was not void as contrary to the public policy of Montana. 869 F.2d at 512–514.[7] At first glance, one may be inclined to rely on the rationale of *Miller* to resolve the issue at bar. However, the court in *Miller* took caution to limit its holding regarding the validity, under Montana law, of an offset provision in an underinsured mo-

torist endorsement to that type of provision which allows an offset for an amount equal to the liability coverage available from a tortfeasor. 869 F.2d at 513–514. In fact, the court expressly noted the rationale it employed in concluding the offset provision was not void as against public policy may not apply with equal force where the claimed offset results from worker's compensation or any other source that is not a "necessary concomitant of underinsured motorist coverage." 869 F.2d at 513 n. 4. The court in *Miller* did not undertake to elaborate upon the meaning of this generalization.

In *Miller,* the court accurately noted that Montana has no statutory requirement that the purchasers of liability insurance be afforded the opportunity to purchase underinsured motorist coverage. The court found this fact to indicate that no public policy, analogous to that encompassed in the statutory requirement of Mont.Code Ann. § 33–23–201(1) (1987) regarding uninsured motorist coverage, existed with respect to underinsured motorist coverage. This conclusion is valid to the extent it recognizes the Montana Legislature has mandated that all motorists purchasing automobile liability insurance in the state be afforded the opportunity to obtain some statutory minimum amount of protection against an uninsured motorist; an express statement of public policy.

The court recognizes the rationale of *Miller* hinges upon the existence of the all important uninsured motorist statute; a fact which has proven critical historically in determining the propriety of offset provi-

---

5. As would be expected, State Farm directs the court's attention to Mont.Code Ann. § 33–23–203 (1987) which became effective October 1, 1981, thereby postdating the cited cases recognizing the validity of both "intra" and "inter" policy stacking of uninsured motorist coverage.

6. The Montana Supreme Court has recently acknowledged the fact that an insured has paid separate premiums for insurance coverage bears significance in the interpretation of language designed to limit coverage under an insurance policy. *State Farm Mutual Automobile Ins. Co. v. Braun,* 793 P.2d at 254.

7. The precise issue resolved in *Miller* has not, to this point in time, been resolved by the Montana

Supreme Court. On May 29, 1990, this court, in *Grier v. Nationwide Mutual Ins. Co.,* CV–89–190–GF, 1990 WL 284506, certified the following issue to the Montana Supreme Court for resolution pursuant to Mont.R.App.P. 44:

> Is an offset provision in an "underinsured motorist" policy, entitling the insured to an offset for an amount equal to the liability coverage available from a responsible tortfeasor, void as contrary to the public policy of the State of Montana?

The parties to *Grier* are presently pursuing a declaratory judgment action before the Montana Supreme Court.

sions in an uninsured motorist coverage provision. *See, e.g., Simpson v. State Farm Mutual Automobile Ins. Co.,* 318 F.Supp. 1152 (S.D.Ind.1970). Consequently, a narrow reading of *Miller* suggests an offset provision is invalid as against public policy only if it is in derogation of a statute and absent such a statute, a reduction provision should be effectuated as written. However, this court, guided by the rationale expressed by the Montana Supreme Court in *Sullivan v. Doe,* 495 P.2d 193, and its progeny, is compelled to reject such a narrow interpretation. The *Sullivan* decision reflects the existence of a policy in the State of Montana which precludes an insurer from reducing coverage by benefits received by an insured from a collateral source. 495 P.2d at 200. Simply stated, *Farmers* should be limited to the precise facts upon which the decision was based. *Farmers* is not to be read expansively in derogation of Montana's strong public policy in favor of uninsured/underinsured motorist coverage. *See, Scouten v. The Horace Mann Insurance Co.,* CV–89–64–M (decided Jan. 28, 1991). This public policy requires a liberal construction of underinsurance provisions, not the narrow construction followed in *Farmers. Id.*[8]

A second basis exists which counsels a rejection of State Farm's position. The "other insurance" clause contained in the underinsured motorist endorsement of the State Farm policies does not expressly define "other insurance". Rather, the prefatory language of the clause simply inserts the generic term "other underinsured motor vehicle coverage". The endorsement does not expressly state whether the term "other" was intended to include other

underinsured motorist coverage provided by State Farm under which the Bennetts were insureds, or whether the term was intended to refer to underinsured motorist coverage provided by another company. The ambiguity created by use of the generic term "other" is further confused by the statement in section 1(b) of the clause: "We are liable only for our share." As a result, the clause "other underinsured motor vehicle coverage" is subject to differing interpretations.

■ Other courts have found essentially identical language contained in an "anti-stacking" clause ambiguous and ineffective to prevent stacking where an insured asserted aggregate coverage under his or her own policy and under a policy issued to another named insured (*albeit* a family member) by the same insurance company. *Goss v. State Farm Mutual Automobile Ins. Co.,* 147 Ill.App.3d 866, 101 Ill.Dec. 238, 498 N.E.2d 562 (1986); *Kauffman v. Economy Fire & Casualty Co.,* 76 Ill.2d 11, 27 Ill.Dec. 742, 389 N.E.2d 1150 (1979). In view of Montana's strong public policy requiring liberal construction of underinsured provisions in favor of coverage, the ambiguity in the underinsured motorist provisions at issue in this litigation must be strictly construed in favor of the insured. The construction comports with the reasonable expectations of the insured. *See, Transamerica v. Royle,* 202 Mont. 173, 180–181, 656 P.2d 820, 824 (1983). Therefore, the court deems it appropriate to DENY the defendant's motion for summary judgment, and hold that the defendant State Farm Mutual Automobile Insurance Company is required, under the terms of the underinsured motorist endorsement

---

**8.** In *Scouten,* the Honorable Harry Pregerson, United States Circuit Judge for the Ninth Circuit Court of Appeals, sitting by designation, rejected the insurer's attempt to offset the stated cumulative (or "stacked") limits of the underinsured motorist coverage by the monies received by the insured from a tortfeasor's liability insurance carrier. Because the insured's injury damage claim exceeded the sum total of the cumulative limits of the insured's underinsurance coverage and the amounts received from the responsible tortfeasor's liability insurance carrier, Judge Pregerson held the amounts paid the insured by the tortfeasor's carrier cannot be used to offset

the cumulative limits of the underinsurance coverage. Slip op. at 4. Emphasizing the Montana Supreme Court's "strong pronouncement" of public policy supporting a liberal construction of underinsured provisions to favor coverage, and Montana's adherence to the doctrine of "reasonable expectations", Judge Pregerson was compelled to interpret the ambiguous provisions of the policy in favor of coverage. Judge Pregerson hastened to note that if any conflict exists between the Ninth Circuit Court of Appeals' decision in *Farmers* and the Montana Supreme Court's decision in *Braun,* the decision of the Montana court is controlling. *Id.*

contained in the contracts of insurance extant between it and the Bennetts, to extend underinsured motorist coverage to the plaintiff, Bonnie Lynn Alderink Bennett, under each contract in the amount of $100,-000.00.

IT IS SO ORDERED. JUDGMENT in favor of the plaintiff shall be entered accordingly.