ALBERT W. CHAFFEE, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF BRUCE CHAFFEE, DECEASED, PLAINTIFF AND APPELLANT, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, A CORPORATION, AND CLIFFORD J. KNAPSTEAD, DEFENDANTS AND RESPONDENTS.

No. 14109.
Submitted Nov. 21, 1978.
Decided March 2, 1979.
Rehearing Denied March 29, 1979.
591 P.2d 1102.

( 1 )

2

Smith & Harper, Helena, Charles A. Smith III argued, Helena, for plaintiff and appellant.

Gough, Booth, Shanahan & Johnson, Helena, Daniel C. Murphy argued, Helena, for defendants and respondents.

MR. JUSTICE DALY delivered the opinion of the Court.

The parties to this action proceeded in the District Court of the First Judicial District, Court of Lewis and Clark, on an agreed statement of facts. They were seeking resolution of a coverage question concerning uninsured motorist insurance issued to appellant Chaffee by respondent United States Fidelity & Guaranty Company (USF&G). The District Court held that Chaffee, as administrator of his deceased son's estate, was not entitled to combine the policy limits of his insurance based on the number of premiums paid on several vehicles insured under one policy of insurance. Rather, he is only entitled to the stated limits of the coverage on one vehicle. From this judgment, Chaffee appeals.

■ Prior to October 19, 1972 USF&G issued its policy of automobile liability insurance to Chaffee. The policy included a provision for uninsured motorist coverage in the amount of $10,000 for one person in any one accident. Three motor vehicles, all owned by Chaffee, were covered by the same policy, and a separate equal premium was charged and paid for uninsured motorist coverage for each of the three vehicles. Chaffee, his wife, and his minor son Bruce were insureds by definition under the policy, which was in full force and effect on October 19, 1972.

On October 19, 1972, appellant's son Bruce Chaffee, was injured while riding in an uninsured vehicle owned and operated by a Clifford Knapstad. A few days later Bruce died from his injuries received in that accident. On March 7, 1977, Albert Chaffee obtained a $304,000 wrongful death judgment against Knapstad, which is still unsatisfied. On the basis of Knapstad's adjudicated liability, Chaffee attempted to collect on his uninsured motorist coverage with defendant USF&G. USF&G, while admitting its obligation to pay, contends that its maximum liability for the death of a single insured person is $10,000. Chaffee contends that since he was paying premiums for uninsured motorist coverage on three vehicles at the time his son was killed, he is entitled to combine the policy limits to a total of $30,000.

The issue before this Court is whether an insured is entitled to combine the policy limits for uninsured motorist coverage based upon the number of vehicles for which he is paying uninsured motorist premiums, under one policy of insurance. It is admitted by USF&G, and this Court has held, that combining in this fashion is proper and has been allowed by this Court where the vehicles were under separate policies of insurance. *Sullivan v. Doe* (1972), 159 Mont. 50, 495 P.2d 193. Hence, combining coverage as such is not an issue here. The issue may more properly become, can an insurance carrier combine three coverages, collecting an equal premium for each, under one policy to avoid payment up to the combined limits?

Montana's uninsured motorist statute reads:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered or issued for delivery in this state, with respect to any motor vehicle registered or principally garaged in this state, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 53-438 [now section 61-6-103 MCA], under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage; and, provided further, that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with the policy previously issued to him by the same insurer." Section 40-4403, R.C.M.1947, now section 33-32-201 MCA.

The cases that have directed combining policy limits have done so for the most part because they have considered it an anomaly that an insurer could effectively prevent combining by including several vehicle coverages in a single policy, if the insurer would be liable up to the combined limits if it insured several vehicles under separate policies. *Tucker v. Government Employees Insurance Co.* (Fla.1974), 288 So.2d 238, 242. Some adopt this rationale together with other considerations such as statutory provisions and public policy. *Federated American Insurance Company. v. Raynes* (1977), 88 Wash.2d 439, 563 P.2d 815, 820.

Jurisdictions that have taken a contrary view justify this position, as did the Supreme Court of South Dakota, by reasoning that, "While it is true that the [insured] paid a separate premium for uninsured motorist coverage on each vehicle, there is an increased risk because both vehicles could be traveling the highways at the

same time." *Cunningham v. Western Casualty & Surety Co.* (S.D.1976), 243 N.W.2d 172, 173-74. Other jurisdictions have explained the lack of a "windfall" in other ways.

There are a number of jurisdictions that hold one way or the other, but all of them have justified their positions based on the considerations set forth above.

Respondent USF&G in the matter under consideration defends its position on the same grounds with some variations. USF&G justifies assessing the same premium but afforded different or less coverage per second and third vehicle as follows:

". . . As discussed earlier, two classes of coverage are contained in uninsured motorist protection. In cases where each automobile owned by the insured is covered by a separate policy, the insurers agree to provide both classes of coverage when they charge and accept one premium. The result is, as in *Sullivan,* supra, that the insurers have held to their bargain.

"In a single policy case, the insurer charges a premium for the *first* vehicle. That provides both classes of coverage. That premium provides uninsured motorist protection for the named insured and his family in all circumstances and for any other person occupying the insured vehicle upon which the premium was paid. Additional premiums charged for a *second* or *third vehicle extend the second class* of coverage to those vehicles and the person occupying them. This is an added risk for which the insurer charges an additional premium." (Emphasis added.)

Respondent goes on to explain, "that a difference or incongruity, unlike an ambiguity, does not permit a court to construe a policy." This type of reasoning is fraught with faulty logic. There are no added risks to justify the full premium paid on the second and third vehicles. The risk in each case should be the same but becomes *less, not more,* when the coverage on the second and third vehicles is *reduced to coverage only while the insureds occupy the second and third vehicles.* Therefore, the first vehicle coverage as contemplated by the clear and unambiguous language of section 40-4403, R.C.M.1947, now section 33-23-201 MCA. The coverage on the

second and third vehicle does not and is therefore in violation of section 40-4403 and cannot stand.

The concept of uninsured motorist coverage although issued with the liability policy is not dependent on insured's negligence or *that the insured occupy a vehicle named in the insured's policy to recover for the insured loss. Federated American Insurance Co. v. Raynes*, 563 P.2d at 820. An attempted reduction of coverage of this kind simply takes the heart out of the policy and erodes the coverage to a point of no value simply because the policy on the first vehicle becomes the only *full* coverage.

The *Raynes* decision by the Washington Court is based on their statute, R.C.W. 48.22.030, which in all relevant respects is identical to Montana's section 40-4403. The case itself contains, among other issues, the same problem we are considering and founded on the same, but somewhat weaker, fact situation. In the Washington case, the premium was reduced by $5.00 for the second and third vehicles. Yet the Washington Court reasoned in this manner:

". . . However, we need not rule on whether the separability provision requires the combining of uninsured motorist coverages, *for we believe the limits-of-liability provision conflicts with the statutory policy of providing uninsured motorist coverage.*

"Respondent paid two premiums for uninsured motorist coverage and is entitled to the full protection which he has purchased. The form of protection should not control the limits of FAI's liability. If respondent had insured his two cars under two separate policies with FAI and paid uninsured motorist premiums for each car, he would be entitled to $30,000.00 in uninsured motorist coverage from FAI. (Citing cases.) *We do not believe the result should be different simply because his two cars are insured under one single policy. In either case, he has paid two premiums for uninsured motorist coverage and is entitled to $30,000.00 in coverage.* (Citing cases.)

"There is an additional reason for our ruling that the number of uninsured motorist coverages on which an insured is entitled to re-

ly is determined by the number of premiums paid. *Uninsured motorist coverage is not dependent on the insured occupying a vehicle named in the policy.* (Citing cases.) In this present case, respondent is entitled to recover under his policy with FAI because uninsured motorist coverage protects an insured, even though he was not occupying a vehicle named in the policy. *If we limit respondent's uninsured motorist coverage to $15,000, he will not have gained anything by paying the second premium, because the uninsured motorist premium which he paid for this first car would cover the $15,000. In effect, FAI will have gained a windfall by collecting the second premium.*

"We hold that the number of insured motorist coverages on which an insured is entitled to rely is determined by the number of premiums paid and not by the number of policies under which the cars are insured. Because the limits-of-liability provision in FAI's policy purports to limit coverage based on the number of policies issued to an insured and not on the number of premiums paid by the insured, the provisions constitutes an invalid attempt by FAI to erode the amount of uninsured motorist coverage to which respondent is entitled. Respondent may combine the two uninsured motorist coverage under his policy with FAI." (Emphasis added.) 563 P.2d at 820.

We agree with the Washington Court.

As our discussion indicates, the attempt to limit the coverage under one policy to prevent combining of the coverages is in violation of section 40-4403, R.C.M.1947, and public policy. The insured bought insurance and paid three premiums on three vehicles and may combine the coverage in the same fashion as is permitted if the vehicles were insured under three policies. In the instance the amount would be $30,000 inasmuch as it would be a lesser amount than the adjudicated damages awarded appellant Chaffee and remaining unpaid.

The judgment of the District Court is reversed, and the cause remanded with instructions to enter judgment for appellant in conformity with this opinion.

MR. CHIEF JUSTICE HASWELL and JUSTICES HARRISON, SHEA and SHEEHY concur.