**UNIGARD MUTUAL INSURANCE COMPANY, and Mission Insurance Company, Plaintiffs-Appellants,**

v.

**Darrell ABBOTT, et al., Defendants-Appellees.**

No. 83–4042.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1984.

Decided May 8, 1984.

---

6. Title 25 U.S.C. § 311 does not apply to our case as it deals only with Indian land.

7. *Supra* n. 5.

Patrick F. Hooks, Hooks & Budewitz, Townsend, Mont., John C. Moore, Tewell, Thorpe & Findlay, Inc., Hugh R. McGough, Seattle, Wash., for plaintiffs-appellants.

Mary H. Terzino, John H. Hinderaker, Faegre & Benson, Minneapolis, Minn., for defendants-appellees.

Before WRIGHT, GOODWIN and NORRIS, Circuit Judges.

GOODWIN, Circuit Judge.

In 1979 PCBs leaking from a transformer stored at the plant of Pierce Packing Company contaminated its animal feed products. Customers that used the feed products were required to destroy animals and food products. Unigard and Mission are respectively Pierce's primary and excess liability insurers. Unigard provided $500,000, and Mission provided $1,000,000 of general liability coverage. The district court held Unigard and Mission liable for a further $500,000 and $1,000,000, respectively, under the automobile coverage provisions of their policies. They appeal.

Following notice of substantial liability claims, Unigard and Mission, unopposed by Pierce, obtained a declaratory judgment that their applicable policy limits were $500,000 and $1,000,000. They then filed the present interpleader action, deposited $1,500,000 with the district court, and named claimants as defendants. After claimants raised the issue of automobile coverage, Unigard and Mission were required to post a bond for the additional $1,500,000, and the declaratory judgment was modified to reflect the potential additional liability.

Trial established that negligent operation of a Pierce garbage truck had damaged a stored transformer. Leaking PCBs ran from the transformer through a drain in the storage building's floor into the drainage system through which slaughter house residues used to make animal feed also passed.

Because the jury found that the negligent operation of a truck was causally involved in the escape of PCBs, the district court imposed liability under both general and automobile liability provisions of the insurance policies. Following trial, claimants' motion for interest on the additional $1,500,000, running from the initial creation of the interpleader fund, was granted. The present appeal challenges both the declaration of an additional $1,500,000 of liability and the interest on it.

### I. Double coverage in general

The district court correctly concluded that according to Montana law the insur-

ance policies provide separate reimbursement for automobile and general liability claims arising from the same accident.

Pierce paid separately computed and itemized premiums for the general liability and automobile coverages. The Montana Supreme Court has stated that it is the number of separate coverages, not the number of policies, that dictates the insurer's liability. *Chaffee v. United States Fidelity & Guaranty Co.*, 181 Mont. 1, 591 P.2d 1102 (1979).[1]

 The insurers argue that the policies exclude overlap in the two coverages. However, the policies are ambiguous, *see infra,* and Montana courts construe ambiguous policy exclusions against the insurer. *Fassio v. Montana Physicians' Service,* 170 Mont. 320, 553 P.2d 998, 1000 (1976).

 The district court correctly concluded that Montana would adopt the reasoning of *State Farm Mutual Automobile Insurance Co. v. Partridge,* 10 Cal.3d 94, 514 P.2d 123, 109 Cal.Rptr. 811 (1973). In *Partridge* the driver's gun, whose trigger mechanism the driver had altered, accidentally discharged and shot a passenger when the driver was driving off the road on bumpy terrain. Both automobile and homeowner's policies provided coverage. Based on the principle that exclusionary provisions are to be narrowly construed, the court found that the automobile exclusion in the homeowner's policy applied only if the insured's liability arose exclusively out of automobile operation.[2] Other states

---

**1.** Although the Montana legislature reversed *Chaffee* in 1981 with respect to uninsured motor vehicle coverage, Mont.Code Ann. § 33–23–203 (1983), absent legislative direction on the general question of separate coverage, the reasoning of the Montana Supreme Court remains persuasive.

**2.** The insurers contend that the rule of *Partridge* is inapplicable to this case because *Partridge* requires that each cause of claimants' injuries be a proximate cause and the negligent operation of the Pierce garbage truck was not a proximate cause. The insurers misinterpret *Partridge. Partridge* simply held that when injury

is caused by both auto-related conduct and non-auto-related conduct, the insurer is not shielded from liability by exclusionary language in the insurance provision covering the non-auto-related conduct, if *the non-auto-related conduct* is a proximate cause of the injury. *Partridge* did not require that the auto-related conduct also be a proximate cause of the injury. Thus, the California Supreme Court explained its ruling, writing:

[A]lthough the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries .... [I]nasmuch as the liability of the insured arises

have adopted this analysis. *E.g., Waseca Mutual Insurance Co. v. Noska,* 331 N.W.2d 917 (Minn.1983); *Lawver v. Boling,* 71 Wis.2d 408, 238 N.W.2d 514 (1976).

Unigard and Mission cite *State ex rel. Butte Brewing Co. v. District Court,* 110 Mont. 250, 100 P.2d 932 (1940) as indicating that Montana would not adopt overlapping coverage for concurrent causes. In that case two insurance companies were each asserting that the other was solely liable depending on whether unloading of a truck was in progress at the time of the accident. Accordingly, *Butte* does not involve concurrent causation. The instant case does involve concurrent causation. The negligent operation of the truck in concurrence with the design of the Pierce plant and storage of the transformer produced the accident.

■ Unigard and Mission also argue that Montana would reject *Partridge* in favor of *Aetna Insurance Co. v. Kent,* 85 Wash.2d 942, 540 P.2d 1383 (1975). In *Aetna* a rock which fell from a moving dump truck caused an accident. The Washington Supreme Court found that the contractor policy effectively excluded automobile coverage. More recently the Washington Supreme Court characterized *Aetna* as

> holding [that] the two policies, issued to the same party by the same company, should be read together to ascertain the intent of the parties, and that the rule of strict construction should not be used to override the otherwise apparent clear intention of the parties.

*McDonald Industries, Inc. v. Rollins Leasing Corp.,* 95 Wash.2d 909, 631 P.2d 947, 951 (1981). *McDonald* reaffirms Washington's adherence to the principle of narrow construction of exclusions of coverage when the parties' intent is unclear. 631 P.2d at 950. Because of the ambiguity in Pierce's policies and the lack of clear intention of the parties to the insurance

policies, we believe that even if Montana courts were to follow Washington rather than California law, Montana would still reach the same result. Concerning the parties' intent, we note that Pierce's failure to oppose Mission and Unigard's obtaining a declaratory judgment of limited liability is not evidence of their intent in making the insurance agreements. A post accident stipulation between parties to an insurance contract in contemplation of litigation with claimants cannot prejudice claimants' rights. *See* Mont.Code Ann. § 61–6–103(6)(a) (1983) (post accident modifications of motor vehicle liability policies without effect).

## II. Unigard policy

■ Unigard argues that its policy's characterization of the general liability and automobile coverages as single limit coverages limits aggregate liability for any one occurrence to $500,000. There is, however, no unambiguous statement in the policy that the two coverages are subject to the same limit. Under *Chaffee* and *Fassio* any ambiguity in the meaning of the limitation is appropriately construed against Unigard. Unigard points to an endorsement stating that for damages "arising out of the products hazard," $500,000 is the annual limit of its liability. The general liability coverage provisions define products hazard as including bodily injury or property damage arising out of Pierce's products. However, the endorsement is limited by its own language to replacing the limits of liability as stated in the declarations for Coverage A (bodily injury liability) and Coverage B (property damage liability), which together comprise the general liability coverage. Hence, the endorsement does not treat the relationship between the general liability and automobile coverages.

## III. Causation

■ The jury found that the Pierce driver's negligence was a proximate cause of

---

from his non-auto-related conduct, and exists independently of any "use" of his car, we believe the homeowner's policy covers that liability.
10 Cal.3d 94, 514 P.2d at 129, 109 Cal.Rptr. 811. Here, the alleged causation problem concerns

the insured's auto-related conduct, rather than the insured's non-auto-related conduct, and is consequently irrelevant for the purpose of determining *Partridge*'s applicability.

the accident. The insurers argue that the harm caused by the truck was insufficiently foreseeable or too remote to impose liability under Montana law. In its policy, Unigard promised to pay on Pierce's behalf "all sums which [Pierce] shall become legally obligated to pay as damages ... arising out of the ownership, maintenance or use, including loading and unloading, of any automobile ...." The damages for which Pierce is responsible on theories independent of the truck exceed the amount of the general liability coverage by more than the potentially available automobile coverage. Because Unigard's liability under the automobile coverage originates from the quoted language of the insurance contract rather than from Montana tort law, the causal relationship which the jury found between the truck and the accident is sufficient to impose liability under the contract. *See, e.g., Partridge*, 10 Cal.3d at 100, 514 P.2d at 127, 109 Cal.Rptr. at 815. Accordingly, we do not address the parties' disagreements about Montana tort law.

## IV. Mission policy

■ On its declarations page, the Mission policy shows a single limit of $1,000,000 per occurrence and $1,000,000 in the aggregate for each policy year. However, Endorsement #2 amends these limits. It provides that "The umbrella certificate aggregate limit, so amended [i.e. $1,000,000], shall apply separately to each underlying insurance coverage which carries an aggregate limit in the policy of underlying insurance."

Unigard's general liability coverage had an aggregate limit; hence, Mission's coverage on general liability is $1,000,000. The umbrella aggregate limit of $1,000,000 applies separately to this coverage from other coverage, *i.e.*, the automobile coverage. At the very least, Endorsement #2 introduces an ambiguity into the policy which under Montana law must be construed against Mission. *Aetna Insurance Co. v. Cameron*, 633 P.2d 1212, 1214 (Mont.1981). Hence, Mission provides both $1,000,000 of automobile coverage and $1,000,000 of general liability coverage for this accident.

Mission argues that Endorsement #2 contains language limiting its application. Endorsement #2 does go on to state that it does not revise in any manner the provisions regarding the aggregate limit of coverage as respects products liability. However, at that point Endorsement #2 is referring to the Mission policy heading entitled "II. Limit of Liability." That heading reads:

Underwriters hereon shall only be liable for the ultimate net loss ... subject to a limit as stated in Item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, *separately* in respect of Products Liability .... (Emphasis added)

In conjunction with Endorsement #2 this means that Endorsement #2 does not modify heading II's provision that any limit for Products Liability is to be considered separately, regardless whether the underlying policy has an aggregate limit. Endorsement #2 does not preclude both general liability and automobile coverage.

## V. Interest

■ The district court awarded interest on the $1,500,000 not originally deposited with the court. The sum of interest awarded equals the amount of interest earned on the $1,500,000 originally deposited.

Although claimants did not raise the issue of additional coverage until 1981, internal Unigard documents indicate awareness of the possibility of additional coverage when the interpleader action began in 1979. Under the statutory interpleader action commenced by Unigard and Mission, 28 U.S.C. § 1335, they were obligated to deposit or post a bond with the court equal to the maximum claim. *New York Life Insurance Co. v. Lee*, 232 F.2d 811, 815 (9th Cir.1956). As the district court noted, Unigard and Mission could have deposited the maximum amount and then litigated the extent of their liability for automobile coverage. *New York Life*, 232 F.2d at 814.

Relying on *Aetna Casualty & Surety Co. v. B.B.B. Construction Corp.*, 173 F.2d 307 (2d Cir.), *cert. denied* 337 U.S. 917, 69 S.Ct. 1158, 93 L.Ed. 1726 (1949), Unigard and Mission argue that because they could have satisfied the interpleader statute by filing a bond, they should not have to pay interest. *B.B.B. Construction* found the stakeholder surety not liable for interest in part because under New York law, interest did not begin to run until the surety defaulted, which it never did, and in part because the trial judge had discouraged deposit of the fund with the court. Absent analogous circumstances, even if Unigard and Mission had timely filed a bond in the full possible amount, the district court would have had discretion to require payment of interest in order to prevent unjust enrichment of the stakeholders. *See Gelfgren v. Republic National Life Insurance Co.*, 680 F.2d 79, 82 (9th Cir.1982) (failure to award interest would unjustly enrich stakeholders).

Affirmed.