05-216

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 153

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiff and Respondent,

   v.

JEFF GIBSON, MELINDA GIBSON, AMBER
GIBSON, ZACHERY GIBSON and EDWARD
KINION,

        Defendants and Appellants
        and Counter-Claimants.


APPEAL FROM:    The District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. BDV 2003-1353,
                Honorable Julie Macek, Presiding Judge


COUNSEL OF RECORD:

        For Appellants:

                Benjamin R. Graybill, Graybill, Ostrem, Crotty & Stubbs, P.C.,
                Great Falls, Montana

                Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

        For Respondent:

                Robert F. James, Ugrin, Alexander, Zadick & Higgins,
                Great Falls, Montana


                Submitted on Briefs:  February 23, 2006

                            Decided:   June 25, 2007

Filed:

                          _____
                                  Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Jeff Gibson, Melinda Gibson, Amber Gibson, Zachery Gibson, and Edward Kinion (the Gibsons) sought to recover from State Farm Mutual Automobile Insurance Company (State Farm) medical payments coverage (MPC) from three policies they had with State Farm.  State Farm brought an action in the Eighth Judicial District Court, Cascade County, seeking a declaratory judgment regarding the scope of the MPC under the three auto insurance policies.  The District Court granted State Farm's motion for summary judgment on the grounds that Gibsons could not stack the MPC.  We reverse and remand.

¶2     The issue on appeal is:

¶3     Does Montana public policy require stacking of MPC, regardless of language purporting to limit such coverage to occupants of one vehicle?

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

¶4     On July 22, 2003, the Gibsons were involved in a motor vehicle accident in Great Falls, Montana, while driving their 2001 Ford Escort (Escort).  Melinda and Amber Gibson suffered injuries and incurred medical expenses in excess of $5,000.00.  At the time of the accident, the Gibsons insured the Escort, a Ford F-150 truck (F-150), and a Pontiac Grand Am (Pontiac) with State Farm under separate policies, paying separate premiums for each policy.  Each of the three State Farm auto policies included MPC in the amount of $5,000.00.  The Gibsons paid a premium for the MPC coverage included in each policy.

2

¶5 Each of the Gibsons' three State Farm insurance policies read in relevant part:

**MEDICAL EXPENSES**
We will pay reasonable medical expenses incurred, for bodily injury caused by accident, for services furnished within three years of the date of the accident. . . .
**Persons for Whom Medical Expenses Are Payable**
We will pay medical expenses for bodily injury sustained by:
    1.    a.  the *first person named*; and
            b.  his or her *relatives*.
These *persons* have to sustain the *bodily injury*
          a.  while they operate or *occupy* a vehicle covered under the liability section; . . .

The term "vehicle" is defined in the liability section as "your car." The definitions section states that "your car" means "the car or the vehicle described on the declarations page." The MPC section also includes certain exclusions:

**What Is Not Covered**
THERE IS NO COVERAGE: . . .
    4.  FOR MEDICAL EXPENSES FOR *BODILY INJURY*:
          a.  SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED OR LEASED BY *YOU* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY[.]

¶6 Gibsons sought to stack the Escort's MPC with the MPC coverages on the other two vehicles they insured with State Farm. State Farm refused to provide MPC in excess of that contained in the Escort's policy on the grounds that the MPC provided in the other two policies did not apply to the accident because the Gibsons were not operating or occupying the other two vehicles at the time of the accident. State Farm then filed a complaint seeking declaratory judgment that Gibsons were not entitled to MPC under the other two policies. Gibsons counterclaimed, asserting the policies should be stacked.

3

¶7  The District Court granted summary judgment in State Farm's favor on the grounds that the policy's language that provided "[t]hese persons [for whom medical expenses are payable] have to sustain the bodily injury:  a. while they operate or occupy a vehicle covered under the liability section," meant that only the Escort's policy applied because that was the vehicle the Gibsons occupied during the accident.  The District Court relied on our decision in *Lierboe v. State Farm*, 2003 MT 174, 316 Mont 382, 73 P.3d 800, and concluded that the other two MPC coverages could not be stacked because only the policy for the Escort applied.  Gibsons timely appealed.

## ISSUE

¶8  *Does Montana public policy require stacking of MPC, regardless of language purporting to limit such coverage to occupants of one vehicle?*

## STANDARD OF REVIEW

¶9  We review a district court's grant of summary judgment de novo.  We apply the same criteria applied by the district court pursuant to M. R. Civ. P. 56.  The moving party must establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law.  Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact.  The interpretation of an insurance contract in Montana is a question of law.  *Augustine v. Simonson*, 283 Mont. 259, 263, 940 P.2d 116, 118 (1997).  We review a district court's conclusions of law to determine whether the court's conclusions of law are correct.  *Hern v. Safeco Ins. Co. of Ill.*, 2005 MT 301, ¶ 18, 329 Mont. 347, ¶ 18, 125 P.3d 597, ¶ 18 (citations omitted).

4

## DISCUSSION

¶10 The Gibsons contend that Montana public policy favors stacking of MPC. They argue that State Farm's provision that limits recovery of MPC to the policy covering only the vehicle occupied in the accident defeats public policy. The Gibsons assert our decision in *Lierboe* is factually distinct from this case and should not operate to defeat Montana's public policy favoring the stacking of MPC. State Farm argues in response that our decision in *Lierboe* should preclude the Gibsons' from recovering MPC from the F-150 and Pontiac on the grounds that the language in the policies limits coverage only to the vehicle actually occupied and involved in the accident. State Farm contends that because MPC from the other two policies is excluded, the Gibsons may not stack the MPC.

¶11 We have held that if a contract's terms are clear and unambiguous, the contract language will be enforced. *Swanson v. Hartford Ins. Co. of Midwest*, 2002 MT 81, ¶ 32, 309 Mont. 269, ¶ 32, 46 P.3d 584, ¶ 32 (citations omitted). The only exception to enforcing an unambiguous contract term is if that term violates public policy or is against good morals. *Swanson*, ¶ 32. We previously concluded that a provision that defeats coverage for which valuable consideration has been received violates Montana public policy. *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 40, 315 Mont. 107, ¶ 40, 67 P.3d 892, ¶ 40; *Bennett v. State Farm Mut. Auto. Ins. Co.*, 261 Mont. 386, 389, 862 P.2d 1146, 1148 (1993). Although *Hardy* and *Bennett* involved underinsured motorist coverage, we have applied the same public policy considerations to MPC and held that when an insurer receives valuable consideration for each policy, the insurer cannot refuse

5

to pay the benefits due pursuant to each policy. *Rucksdaschel v. State Farm*, 285 Mont. 395, 399, 948 P.2d 700, 702 (1997).

¶12 State Farm relies on our decision in *Lierboe* for its proposition that "coverage" issues are distinct from "stacking issues." It argues that, under *Lierboe*, the analysis of whether to stack the Gibsons' policies need not be made because the "occupancy" clauses preclude coverage under the Gibsons' other two policies. However, the facts in *Lierboe* are clearly distinguishable from this case, and to the extent that our decision in *Lierboe* created the "coverage" and "stacking" distinction, we limit *Lierboe* to its specific facts as hereinafter set forth.

¶13 In *Lierboe*, Kristine Lierboe suffered injuries as the result of an automobile accident while driving her Jeep Cherokee that she insured with State Farm. *Lierboe*, ¶ 7. Leirboe sought to stack the Jeep's MPC with the MPC for a Dodge Dakota (Dodge) which was owned by Shining Mountain Design and Construction (Shining Mountain), a corporation in which Lierboe had a shareholder interest. *Lierboe*, ¶ 8. We concluded that Lierboe was not covered under more than one policy because she was not a named insured on the policy for the Dodge and was not occupying the Dodge at the time of the accident. *Lierboe*, ¶ 22. We also stated that Lierboe did not have reasonable expectations of coverage because she did not qualify as an insured under the Shining Mountain policy and did not purchase or pay for the policy covering the Dodge. *Lierboe*, ¶ 22.

¶14 In *Lierboe*, we relied on *Chilberg v. Rose*, 273 Mont. 414, 903 P.2d 1377 (1995), for the proposition that a person does not have a reasonable expectation for coverage

6

when that person did not purchase the policy and does not qualify as an insured except by occupying the car involved in the accident. Chilberg had sustained injuries while a passenger in a vehicle owned by Jay Dean and insured by Mid-Century Insurance Company. Chilberg did not fit within the definition of insured, either as a named insured, family member, or occupant of a vehicle insured under Dean's other two policies. *Chilberg*, 273 Mont. at 419, 903 P.2d at 1380. This Court stated that the underlying public policy favoring stacking would not be served because Chilberg could not have reasonably expected coverage under policies he did not purchase, and under which he did not otherwise qualify as an insured. *Chilberg*, 273 Mont. at 419, 903 P.2d at 1380.

¶15   Thus, both Chilberg and Lierboe sought to stack polices that did not name them as insureds and for which they did not pay premiums. The Gibsons, by contrast, are family members, expressly named in the policies at issue. Moreover, the Gibsons paid three separate premiums to State Farm for MPC coverage in three policies. In light of these facts, State Farm's reliance on *Lierboe* is unavailing. Rather, the facts presented here align this case with our previous opinions in *Hardy* and *Ruckdaschel*, in which we disapproved on public policy grounds of policy language which defeated coverage for which valuable consideration had been paid—i.e., policy language which rendered the purchased coverage "illusory." *See Hardy*, ¶ 29.

¶16   In *Rucksdaschel*, the insured was struck as a pedestrian and she sought to recover benefits from three separate MPC policies that were in effect with State Farm at the time of the accident. *Rucksdaschel*, 285 Mont. at 397, 948 P.2d at 701. State Farm relied upon language contained in the policy that provided that the "total limits of liability under

all such coverages shall not exceed that of the coverage with the highest limit of liability," to deny the insured's request to stack MPC from the three policies. *Rucksdaschel*, 285 Mont. at 398, 948 P.2d at 702. The Ruckdaschels, however, paid a premium for each of the three MPC coverages in effect at the time, each of the policies provided MPC for pedestrian accidents, and State Farm received valuable consideration for each policy. *Rucksdaschel*, 285 Mont. at 399, 948 P.2d at 702. This Court concluded that because State Farm received valuable consideration for each policy, State Farm could not refuse to pay benefits due pursuant to each policy. We stated "[t]o hold otherwise would deny State Farm's insured the benefit of the coverage that she purchased." *Rucksdaschel*, 285 Mont. at 399, 948 P.2d at 702.

¶17 Here, State Farm relies on an exclusion to support its contention that the MPC coverages may not be stacked. State Farm maintains that its "occupancy" exception precludes stacking of MPC. However, here, as in *Ruckdaschel*, the "occupancy" provision defeats coverage for which valuable consideration has been paid, and which the insured had every expectation of receiving in an instance such as this.

¶18 The policy in this case provides that "We will pay medical expenses for bodily injury sustained by the first person named *and* his or her relatives." (Emphasis added.) As a result of the accident at issue here, both the named insured (Melinda) *and* a relative (Amber) sustained injuries for which MPC coverage was sought. Therefore, the Gibsons reasonably expected that, consistent with the insuring language, medical expenses of both family members would be covered. Under State Farm's interpretation, however, the insured and the family member riding in the same vehicle—by far the most likely of

8

scenarios—are out of luck if their combined medical expenses exceed the single $5,000.00 limit, despite the fact that they have paid separate premiums for three separate $5,000.00 coverages.

¶19    State Farm argues in its brief to this Court that it is "theoretically possible that at one given moment each of the Gibsons' insured vehicles could be operating and be in individual accidents, with bodily injuries sustained by either the operator or occupants of the insured vehicles."  Indeed, under State Farm's interpretation, this "fortuity" would be the only circumstance in which an insured operating an insured vehicle would be able to collect more than one $5,000.00 limit at the same time—if two insureds were involved in two separate accidents involving two separate insured vehicles simultaneously.  The odds of such a tragic coincidence are infinitesimal.  Simply put, regardless of the severity of the injury or the number of relatives injured, an insured can never recover two-thirds of the coverage she paid for as long as the injuries occur in one insured vehicle.

¶20    The anti-stacking effect of the language limiting recovery to vehicles occupied during the accident is further evidenced by State Farm's own admission that individuals injured as pedestrians or while occupying a non-owned vehicle are permitted to stack MPC.  The only individuals not entitled to stack multiple MPCs under State Farm's current policy are insureds, like the Gibsons, who are injured in an accident in which they are occupying their own vehicle.  The occupancy requirement clearly has the effect of precluding stacking.

¶21    In *Hardy*, we articulated that an anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided

9

violates Montana public policy. *Hardy*, ¶ 42. We rejected arguments similar to those made by State Farm in this case, including the argument that the risk involved in providing additional policies to one insured justified additional premiums for coverages that could not be stacked. *Hardy*, ¶ 41 (citing *Chaffee v. U.S. Fid. & Guar. Co.*, 181 Mont. 1, 591 P.2d 1102, (1979)). We also found that public policy considerations favor adequate compensation, even for non-mandatory coverage. *Hardy*, ¶ 21.

¶22 Based on the foregoing, we conclude that State Farm's anti-stacking provisions violate public policy by allowing State Farm to receive valuable consideration for coverage that is not provided. *Hardy*, ¶ 42. In addition, we clarify that our analysis in *Lierboe* is limited in application to those instances in which a claimant seeks to stack coverages from a vehicle she does not own and from an insurance policy she did not purchase.

¶23 Reversed and remanded.

/S/ PATRICIA COTTER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

Chief Justice Karla M. Gray dissenting.

¶24 I respectfully dissent from the Court's opinion in this case. I would affirm the District Court's grant of summary judgment to State Farm.

¶25 Our jurisprudence regarding the stacking of automobile insurance coverages is extensive and carefully reasoned. Under certain circumstances, we have allowed stacking; under others, we have not. It is appropriate to set out a rather lengthy explication of our case law on this subject as a backdrop for my dissent to the Court's opinion in this appeal.

¶26 The concept of stacking coverages initially arose in the context of uninsured motorist (UM) coverage. Montana law requires, and has required since 1967, that all motor vehicle liability policies issued in this state include UM coverage. Sections 40-4403 RCM (1947) and 33-23-201, MCA. Section 33-23-201, MCA, generally provides that all motor vehicle liability policies issued for vehicles registered in this state must include coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, caused by an accident arising out of the operation or use of such vehicle." We have stated that the purpose of the statute is "to provide protection for the automobile insurance policyholder against the risk of inadequate compensation for injuries or death caused by the negligence of financially irresponsible motorists" and "to place the injured policyholder in the same position he would have been if the uninsured motorist had liability insurance . . . ." *Sullivan v. Doe*, 159 Mont. 50, 60, 495 P.2d 193, 198 (1972).

¶27 Based on the public policy as indicated by the Legislature in enacting the predecessor to § 33-23-201, MCA, we have allowed stacking of UM coverage for an insured under two or more policies for which premiums had been paid for UM coverage, as well as on two or more vehicles for which separate UM coverage premiums had been paid under a single policy. *See, e.g., Sullivan*, 159 Mont. at 63, 495 P.2d at 200; *Chaffee v. U.S. Fid. & Guar. Co.*, 181 Mont. 1, 7, 591 P.2d 1102, 1105 (1979). In addition to the statutory public policy, the *Chaffee* Court

11

observed that, under the language of the statute and the policy at issue, "[t]he concept of [UM] coverage although issued with the liability policy is not dependent on insured's negligence or that the insured occupy a vehicle named in the insured's policy to recover for the insured loss." *Chaffee*, 181 Mont. at 6, 591 P.2d at 1104. In other words, the insurance policy language regarding UM coverage—which mirrors the statutory language—made the coverage personal to the insured and not dependent on the insured occupying a vehicle covered by the policy. Thus, the number of UM coverages which an insured may recover is determined by the number of premiums paid for such coverage, notwithstanding any "other insurance" or anti-stacking language in the policies. *See Chaffee*, 181 Mont. at 7, 591 P.2d at 1105.

¶28 The concept of stacking of insurance coverages eventually expanded from the statutorily-mandated UM coverage to other optional insurance coverages, starting with underinsured motorist (UIM) coverage. In *Bennett v. State Farm Mut. Auto. Ins. Co.*, 261 Mont. 386, 862 P.2d 1146 (1993), the Ninth Circuit Court of Appeals certified the following question to this Court: "Is an 'other insurance' clause which prohibits stacking of underinsured motorist coverage provided by separate policies from the same insurer void as against public policy?" *Bennett*, 261 Mont. at 388, 862 P.2d at 1147. We ultimately answered the question in the affirmative, on facts involving a plaintiff who was an insured under two separate insurance policies—one issued to her and one issued to her husband—on which premiums had been paid for UIM coverage. *Bennett*, 261 Mont. at 388 and 390, 862 P.2d at 1147-49.

¶29 The *Bennett* Court first observed that the purpose of UM coverage was "to provide a source of indemnification for accident victims when the tortfeasor does not provide adequate indemnification[,]" and the public policy behind allowing an insured to stack UM coverage for which separate premiums had been paid was "that an insurer may not place in an insurance

12

policy a provision that defeats coverage for which the insurer has received valuable consideration." We then determined that the public policy reasons for invalidating anti-stacking clauses in insurance policies with regard to UM coverage also favored invalidating anti-stacking clauses relating to UIM coverage, regardless of whether the coverage was required by statute. *Bennett*, 261 Mont. at 389, 862 P.2d at 1148.

¶30 We also rejected State Farm's argument that the insured could not reasonably expect UIM coverage under both policies, but should expect that coverage under a policy only applies to the vehicle insured by that policy, noting that the language of the UIM coverage—which was nearly identical to the UM provisions addressed in earlier cases—"makes [UIM] coverage personal to the insured; coverage does not depend on the insured person occupying an insured vehicle." Thus, the insured could reasonably expect to recover under the UIM provisions "of both policies under which she was an insured and for which separate premiums had been paid." *Bennett*, 261 Mont. at 389-90, 862 P.2d at 1148-49.

¶31 In *Chilberg v. Rose*, 273 Mont. 414, 415, 903 P.2d 1377, 1378 (1995), we affirmed a district court's summary judgment determination that the defendant's insurer was not liable under UM and medical payments coverages provided in separate insurance policies. We noted our prior approval of stacking UM coverages for an insured where separate premiums had been paid for separate UM coverages. We observed, however, that no issue existed in the earlier cases regarding whether the claimant fit within the definition of "insured" for each policy/coverage to be stacked and, once the claimant qualified as an insured, either as a relative or as an occupant, the claimant could stack the coverages. *See Chilberg*, 273 Mont. at 416-17, 903 P.2d at 1379.

¶32 The three policies at issue in *Chilberg*, however—one covering the vehicle in which the injured plaintiff was a passenger, and two others covering other vehicles—defined "insured" as

13

the purchaser of the policy, that person's family members, or "[a]ny other person while occupying" the vehicle insured under the policy. *Chilberg*, 273 Mont. at 418, 903 P.2d at 1380. Chilberg was not a family member of the purchaser of the policies and, therefore, he would qualify as an "insured" only when occupying the vehicle insured under the policy. Because he was "occupying" only one of the purchaser's vehicles at the time of the accident, he qualified as an "insured" only under the policy insuring that vehicle, and was not an "insured" under either of the other two policies. *Chilberg*, 273 Mont. at 418-19, 903 P.2d at 1380. We determined the public policy and "reasonable expectations" rationales of *Bennett* did not require stacking the coverages in *Chilberg* because "Chilberg was a passenger who neither had 'reasonable expectations' of coverage under the policy nor did he qualify as an insured spouse or family member under more than one policy." *Chilberg*, 273 Mont. at 418, 903 P.2d at 1380. We also distinguished our holding in *Chaffee* that UM coverage is personal to the insured—and did not depend on the insured occupying a covered vehicle—because Chilberg did not fit within the definition of "insured" under two of the policies at issue. *Chilberg*, 273 Mont. at 418-19, 903 P.2d at 1380. Thus, Chilberg was entitled to UM coverage and medical payment coverage (MPC) only under the policy insuring the vehicle in which he was a passenger at the time of the accident and could not stack the other two policies.

¶33 Two years later, in *Ruckdaschel v. State Farm*, 285 Mont. 395, 948 P.2d 700 (1997), we affirmed a district court's summary judgment determination that a claimant injured as pedestrian was entitled to stack MPC under three policies for which the claimant paid separate MPC premiums, notwithstanding the policies' anti-stacking provisions. Each policy contained identical language for the MPC which provided, in pertinent part, that the insurer would pay medical expenses for bodily injury sustained by the first person named in the declarations page

14

and his/her relatives for bodily injury sustained "through being struck as a pedestrian by a motor vehicle or trailer." *Ruckdaschel*, 285 Mont. at 396-97, 948 P.2d at 701.

¶34 It was undisputed in *Ruckdaschel* that the claimant qualified as an "insured" for the MPC under each of the three policies. Furthermore, the MPC for an insured injured as a pedestrian was personal to the insured and did not relate to the specific vehicle(s) covered by the policy, much like the UM and UIM coverages discussed in earlier cases. As a result, we determined that the public policy rationale in *Bennett* rendering an anti-stacking provision relating to UIM coverage unenforceable, applied to allow stacking of the MPC in the three policies purchased by Ruckdaschel. *Ruckdaschel*, 285 Mont. at 398-99, 948 P.2d at 702-03.

¶35 In *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, 315 Mont. 107, 67 P.3d 892, we addressed three questions certified to us by the federal district court regarding whether certain provisions of an insurance policy were void as against Montana public policy. There, Hardy suffered injuries while a passenger in a vehicle driven by his wife when they were involved in an accident with a vehicle driven by Marr. Hardy received payment from Marr's liability insurer and then sought to stack payments under the UIM coverages in a Progressive policy covering three vehicles for which Hardy paid separate premiums. Progressive denied coverage altogether and Hardy brought suit in federal district court. *Hardy*, ¶¶ 7-9.

¶36 Under the first certified question, we concluded that two policy provisions—one defining "underinsured motor vehicle" as a vehicle with a liability policy for which the limit is less than the stated UIM coverage on the declarations page of Hardy's policy, and a second providing that Hardy's UIM coverage would be offset by the amount recovered under the tortfeasor's liability policy—conflicted with the declarations page of the policy and violated public policy because

they created an ambiguity regarding coverage, rendered promised coverage illusory and defeated the insured's reasonable expectations regarding UIM coverage. *Hardy*, ¶¶ 19 and 29.

¶37 The second certified question related to whether the anti-stacking provision of Hardy's policy violated public policy. Under this question, we first determined that § 33-23-203, MCA, which authorized such anti-stacking provisions, was unconstitutional as violating substantive due process because the statute allowed charging premiums for illusory coverage. *Hardy*, ¶ 38. Having struck down the Legislature's statutory statement of public policy, we then addressed whether the policy's anti-stacking provision violated public policy as set forth in Montana case law. We observed that, in *Bennett*, we had concluded UIM coverage, by definition, was "personal and portable." *Hardy*, ¶ 40 (referring to our statement in *Bennett* that the language of UIM coverage—and, similarly, UM coverage—"makes [UIM] coverage personal to the insured; coverage does not depend on the insured person occupying an insured vehicle." *Bennett*, 261 Mont. at 389, 862 P.2d at 1148). Thus, we held that the policy's anti-stacking provision violated Montana's public policy by permitting the insurer to receive valuable consideration in premiums for coverage that was not actually provided and violating "the insurance consumer's reasonable expectation that he has purchased UIM coverage, which by definition, is personal, portable, and, therefore, stackable." *Hardy*, ¶¶ 42-45. Finally, we determined that our resolution of the first and second certified questions required an affirmative response to the third question of whether insurance policies violate Montana public policy when they include provisions that defeat coverage for which the insurer has received valuable consideration. *Hardy*, ¶ 47.

¶38 Several months after *Hardy*, we decided *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 2003 MT 174, 316 Mont. 382, 73 P.3d 800, in which we again addressed certified questions from a federal district court. In that case, Lierboe sought to stack the MPC under two separate policies

16

issued by State Farm. Lierboe was a named insured on the first policy, which covered the vehicle Lierboe was driving at the time of the accident. The second policy was issued to a corporation in which Lierboe held an interest and covered a pickup truck owned by the corporation. The first certified question was whether a shareholder of a corporation is a "relative" of the corporation so as to be covered under the corporation's automobile liability policy. The second question was whether the anti-stacking holding of *Ruckdaschel* applied to the facts of the case.

¶39 We addressed the second certified question and determined that Lierboe did not qualify for MPC under the corporation's policy. Both policies provided that Lierboe could receive MPC only for injuries sustained while occupying the vehicle insured under that specific policy. As a result, because Lierboe was not occupying the pickup truck when she sustained her bodily injuries, she could not claim MPC under the corporation's policy. "Lierboe in this case did not have reasonable expectations of coverage under the [corporation's] policy as she did not qualify as an insured under more than one MPC policy. Therefore, there was no stacking issue." *Lierboe*, ¶ 22.

¶40 We distinguished *Ruckdaschel* on the basis that, there, the claimant qualified as an "insured" under each of the policies at issue and, therefore, could recover under each policy. *Lierboe*, ¶ 18. We determined *Chilberg* was more analogous in its holding that a claimant could not stack additional insurance coverages under which he did not qualify as an "insured." *Lierboe*, ¶¶ 21-22. Thus, where the claimant is an "insured" under the policies and the policies provide coverage under the factual circumstances, an insurer may not enforce an anti-stacking provision to defeat those coverages. However, where a claimant does not meet the definition of "insured" or coverage otherwise is excluded under the circumstances of the case, there is no

17

additional "coverage" to be stacked, and any anti-stacking provisions are irrelevant.  *See Lierboe*, ¶ 22.  We did not address the first certified question in *Lierboe*, which was whether a shareholder of a corporation is a "relative" of the corporation so as to be covered under the corporation's automobile liability policy.  *Lierboe*, ¶ 4.

¶41    The above cases—while not exhaustive of our jurisprudence—provide the foundation for the analysis which, in my view, is necessary in addressing insurance policy coverage and stacking issues.  Based on our consistent invalidation of anti-stacking provisions on the basis that a provision which defeats coverage for which valuable consideration has been received—or which renders coverage illusory—violates Montana public policy, I believe determining whether a provision "defeats coverage . . ." involves a multi-step analysis as follows:

¶42    **1.  Were premiums paid?**

¶43    We clearly require that insurance coverages may be stacked only where separate premiums have been paid for each coverage to be stacked, whether under separate policies or for multiple vehicles under one policy.  *See, e.g., Sullivan*, 159 Mont. at 62-63, 495 P.2d at 200; *Chaffee*, 181 Mont. at 7, 591 P.2d at 1105;  *Hardy*, ¶ 42.  This threshold question is not whether the claimant paid the premiums, merely whether *someone* paid premiums for the coverage.  "The justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased.  The benefits flow to all persons insured."  *Dakota Fire Ins. Co. v. Oie*, 1998 MT 288, ¶ 25, 291 Mont. 486, ¶ 25, 968 P.2d 1126, ¶ 25 (quoting *Sayers v. Safeco Ins. Co. of America*, 192 Mont. 336, 340, 628 P.2d 659, 662 (1981)).

¶44    **2.  Is the claimant an "insured"?**

¶45    In order to stack multiple coverages, the claimant must qualify as an "insured" under each claimed coverage.  *Chilberg*, 273 Mont. at 418-19, 903 P.2d at 1380; *Lierboe*, ¶ 22.  "The

18

benefits [of the purchased coverage] flow to all persons *insured*." *Oie*, ¶ 25 (emphasis added). Definitions of "insured" vary to some degree from policy to policy. Furthermore, as discussed more below, some policies provide a definition of "insured" which applies to all coverages purchased with the policy, while other policies define the term differently within each separate coverage.

¶46    **3.    Does the policy provide coverage to the "insured" under the factual circumstances of the case?**

¶47    This step involves the critical distinction discussed in *Lierboe* between "coverage" issues and "stacking" issues. Montana's public policy is that an insurer may not enforce a policy provision which defeats coverage for which the insurer has received valuable consideration. As discussed in *Lierboe*, an insurance policy may limit situations under which a specific coverage applies, but if the coverage applies under the factual circumstances, then the insurer may not refuse payment under that coverage on the basis of other provisions such as anti-stacking clauses.

¶48    **4.    Does the policy provision at issue violate Montana's public policy or the reasonable expectations of the claimant?**

¶49    As discussed above, Montana's public policy is that an insurer may not enforce a policy provision which permits the insurer to receive valuable consideration for coverage which is not actually provided, thus making the coverage "illusory." Additionally, an insurer may not enforce a provision which otherwise defeats a person's reasonable expectations that coverage is available. Thus, once it is established that a) separate premiums have been paid for multiple coverages, b) the claimant qualifies as an "insured" for each of those coverages, and c) the coverages to the insured apply under the factual circumstances of the case, then the claimant

19

generally may stack the coverages. In other words, under the *Lierboe* Court's distinction between anti-stacking provisions and coverage provisions, multiple applicable "coverages" (as determined under the first three steps outlined above) must exist before a stacking analysis comes into play.

¶50    With this four-step analysis in mind, I turn now to the present case. I begin by quoting relevant definitions from the three State Farm policies at issue here.

> *Person*—means a human being.
>
> *You* or *Your*—means the *person(s)* or organizations shown on the declarations page as named insured(s). It includes a *person* who resides primarily in the named insured's household with whom the named insured has a personal relationship arising out of a civil contract.
>
> *Relative*—means a *person* related to *you* by blood or adoption who resides primarily with *you*. It includes *your* unemancipated child away at school.
>
> *First Person Named*—means that *person* whose surname followed by a given name or initial is printed first in the "Insured" section of the declarations page. It includes a *person* regularly residing in the household of the *first person named* with whom the *first person named* has a personal relationship arising out of a civil contract.
>
> *Insured*—means the *person*, *persons* or organization defined as *insureds* in the specific coverage . . . .
>
> *Your car*—means the *car* or the vehicle described on the declarations page.

¶51    Both Jeff and Melinda are listed as named insureds on the declarations page of the three policies; thus, both (either individually or as husband/wife of the other) meet the definition of *You* or *Your*, as well as *Person* and *First Person Named*. It is undisputed that Jeff and Melinda's child Amber meets the definition of *Relative*. It is important to note, however, that the policies define *Insured* in relation to the specific coverage for which a claim may be made, rather than defining a person as an insured for the entirety of the policy.

20

¶52     The MPC provision at issue provides that the insurer "will pay reasonable medical expenses incurred, for *bodily injury* caused by accident, for services furnished within three years of the date of the accident."  Insofar as is relevant to this case, the MPC section further provides as follows:

> **Persons for Whom Medical Expenses Are Payable**
> We will pay medical expenses for *bodily injury* sustained by:
> 1.  a.  the *first person named*; and
>     b.  his or her *relatives*.
>
>     These *persons* have to sustain the *bodily injury*:
>     a.  while they operate or *occupy* a vehicle covered under the
>         liability section; or
>     b.  through being struck as a *pedestrian* by a motor vehicle
>         or trailer.

¶53     The "vehicle covered under the liability section" of each policy is defined as "*your car*," meaning the vehicle described on the declarations page of the individual policy.  The MPC section contains an additional provision stating there is no MPC for medical expenses "SUSTAINED WHILE *OCCUPYING* OR THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED OR LEASED BY *YOU* OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY . . . ."  Finally, the MPC also contains an "other insurance" anti-stacking provision.

¶54     The initial step of my analysis, set forth above, is easily satisfied here because it is undisputed that separate premiums for MPC were paid under each of the policies.  Regarding the second and third steps, the relevant portion of the policy provision defining persons who may claim MPC is stated in two parts, one relating to whom may recover MPC—or who is an "insured"—and one relating to the factual circumstances under which the bodily injury was sustained—or whether the policy provides coverage.  As indicated above, Melinda is the "*first person named*" and Amber is a "*relative.*"  Thus, both are persons for whom MPC may be

21

available under the first part of the MPC provision. In other words, they are potential "insureds" under the policies' MPC.

¶55 The second part of the MPC provision requires that Melinda and Amber sustain the bodily injury while occupying the vehicle described in the policy's declaration page or as a pedestrian. Melinda and Amber were occupying the Ford Escort when they sustained bodily injuries; therefore, they are entitled to MPC under the policy related to that vehicle. However, they were not occupying either the truck or the Grand Am, nor were they pedestrians, at the time they sustained their injuries. Consequently, they do not qualify for MPC under those two policies. As a result, the MPC in the truck and Grand Am policies are not available to Melinda and Amber, and no stacking issue exists. In other words, because—under the third step of my analysis set forth above—the plain language of those policies renders coverage unavailable to them under the truck and Grand Am policies, it is unnecessary to address the policy provisions relating to exclusions from coverage and anti-stacking under the fourth step of my above analysis. This conclusion is supported by our holdings in *Chilberg*—where "Chilberg was a passenger who neither had 'reasonable expectations' of coverage under the policy nor did he qualify as an insured spouse or family member under more than one policy"—and, more expressly, in *Lierboe* where we determined without equivocation that, because Lierboe was entitled to coverage under only one of the two policies at issue, there was no second coverage available to stack. *See Chilberg*, 273 Mont. at 418, 903 P.2d at 1380; *Lierboe*, ¶¶ 19 and 22. This also is the conclusion reached by the District Court in its order granting summary judgment to State Farm.

¶56 My primary problem with the Court's opinion in this case is that it does not adequately address the question of whether all three of the policies at issue here actually provide "coverage"

22

to Melinda and Amber under the circumstances of this case. The Court sets forth the relevant policy language at ¶ 5 and determines at ¶ 18 that Melinda and Amber, as a "first person named" and a "relative," are "insureds" for MPC under each of the policies. The Court then apparently assumes that, because they are "insureds" under the MPC, they are entitled to coverage in all circumstances and under all policies. This assumption leads directly to the inappropriate basis on which the Court attempts to distinguish *Lierboe* and *Chilberg*.

¶57     At ¶ 15, the Court states that these two cases are distinguishable on the basis that the claimants in those cases

> sought to stack policies that did not name them as insureds and for which they did not pay premiums. The Gibsons, by contrast, are family members, expressly named in the policies at issue. Moreover, the Gibsons paid three separate premiums to State Farm for MPC coverage in three policies.

It is true that Melinda is expressly named in the policies as a "named insured." Amber, however, while meeting the definition of "relative," is not "expressly named in the policies . . . ." More importantly, while it is true that they are family members, are expressly named in the policies and separate premiums were paid for MPC under each policy, those matters are ultimately irrelevant to the question really at issue here, which is whether Melinda and Amber are entitled to MPC under these policies and these facts. Under the circumstances of this case and the plain language of the policies, they are not entitled to MPC coverage unless they were occupying the vehicle covered by each policy at the time of the accident. Because Melinda and Amber were occupying only the Escort at the time of the accident, they are entitled to coverage only under the policy insuring the Escort.

¶58     Having improperly "distinguished" *Lierboe* and *Chilberg*, the Court goes on to determine that the facts of this case are analogous to the situations presented in *Ruckdaschel* and *Hardy* and, therefore, require a conclusion that the policy language rendered the purchased coverage illusory. I disagree regarding both the facts and the law.

¶59     As stated above, the claimant in *Ruckdaschel* was a pedestrian when she was injured by a motor vehicle. She had three separate insurance policies, each of which contained an MPC provision identical to those at issue in this case, and she desired to stack the coverages. The insurance company refused to pay under two of the policies based on the MPC anti-stacking

23

provisions. This Court held the anti-stacking provisions violated public policy. The distinguishing fact in *Ruckdaschel* is that the claimant was injured as a pedestrian. It was undisputed that the claimant was an "insured" for purposes of MPC and entitled to MPC under the circumstances. Furthermore, the MPC for a pedestrian clearly is not dependent on occupying a specific vehicle at the time of the accident; thus, it is "personal and portable" much like UM and UIM coverages. Because the claimant otherwise qualified for the MPC under each policy, the anti-stacking provision violated public policy and the claimant's reasonable expectations.

¶60 In this regard, it is important to expressly address the flaws in ¶¶ 17 and 18 of the Court's opinion. The Court focuses on the first portion of the relevant MPC provision relating to who is an "insured," and ignores the second coverage portion of the provision which states that those "insureds" are entitled to MPC only when injured while occupying a vehicle covered under the policy or as a pedestrian. The claimant in *Ruckdaschel* was entitled to MPC under multiple policies because she was injured as a pedestrian; "occupying" a vehicle was *not* the issue in *Ruckdaschel* and, consequently, that case is inapposite.

¶61 Similarly, in *Hardy*, the claimant sought to stack three UIM coverages (which, again, are "personal and portable"), and it was undisputed that the claimant was an "insured" and the coverage was otherwise available. As a result, this Court determined the policy's anti-stacking provision violated public policy and the claimant's reasonable expectations. Here, the MPC is expressly not available under the truck and Grand Am policies under these circumstances. Thus, the public policy analyses in *Ruckdaschel* and *Hardy* simply do not apply.

¶62 Under our cases, public policy requires that an insurer may not enforce a policy provision which permits the insurer to receive valuable consideration for *coverage* which is not actually provided. Thus, this public policy presumes that the coverage otherwise actually exists. Here,

premiums were paid under each policy for MPC. The *coverage*, however, was available only under the circumstances specified in the policies. If those circumstances do not exist, coverage does not exist. Because Melinda and Amber do not qualify for MPC under the truck and Grand Am policies, there is no "coverage" to which the anti-stacking provision would apply. This is the critical distinction we recognized in *Lierboe*. To equate an exclusion from coverage with an anti-stacking provision essentially requires that an insurance company provide global coverage. In other words, if there is no distinction between "coverage" and "anti-stacking" provisions, insurers would be required to make all coverages "personal and portable" and could not legally limit coverage to apply only under specific circumstances. The law simply does not impose such mandates.

¶63 Finally, I see no need to "limit" application of *Lierboe* to its facts, especially since that case is substantially similar to the facts presented here and, indeed, the Court offers no basis for doing so in ¶ 22. In my view, the *Lierboe* Court's coverage/anti-stacking distinction is entirely appropriate. At the same time, it may be fair to say that the *Lierboe* opinion could have been more precise in its factual description and analysis. For example, the opinion fails to note that the two policies at issue in the case were identical (according to Plaintiff's brief in that case) and, thus, the definition of "insured" was the same for each policy. Indeed, the policies in that case also were identical to those at issue here. Furthermore, the opinion quotes the MPC definition of "insured" from one policy and the MPC coverage exclusion from the other policy, again without noting that the policies contain identical provisions. *See Lierboe*, ¶¶ 12-14. As a result, the decision moves between an analysis that the claimant was not an "insured" to an analysis that coverage was excluded under one policy because she was not "occupying" that vehicle without

25

clearly distinguishing between the two concepts. Notwithstanding a certain lack of clarity, however, the case was correctly decided and is directly on point in this case.

¶64 I would conclude that the District Court correctly determined that, pursuant to the plain language of the policies and our decision in *Lierboe*, the MPC was available to Melinda and Amber only under the policy covering the Escort and, as a result, there were no other MPC coverages available to be stacked. Consequently, I would affirm the District Court's grant of summary judgment to State Farm and I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

Justice John Warner joins in the foregoing dissenting opinion of Chief Justice Gray.

/S/ JOHN WARNER

Justice Jim Rice joins the dissenting opinion of Chief Justice Gray.

/S/ JIM RICE